**In re James C. BROLLIER, Debtor.**

**Bankruptcy No. BK–93–10418–BH.**

United States Bankruptcy Court,
W.D. Oklahoma.

Feb. 17, 1994.

---

Susan Manchester of Taylor & Manchester, Oklahoma City, OK, for Kenneth Newell.

Jim W. Lee of Lee, Durocher, Stratton, Mauritson & Reid, Oklahoma City, OK, for Linda Brollier.

## ORDER GRANTING OBJECTION TO TRUSTEE'S NOTICE OF SALE

RICHARD L. BOHANON, Chief Judge.

This matter comes before the court as an objection to the Trustee's notice of intent to sell a tract of land. During their marriage James and Linda Brollier acquired fee simple title to real estate in Kansas taking title in the husband-debtor's name only. Subsequently they jointly conveyed away all but a

portion of their interest, specifically reserving the remainder. James C. Brollier later filed this petition in bankruptcy.

This remaining interest became property of the estate pursuant to 11 U.S.C. § 541. The trustee then noticed a sale and accepted an offer to sell the property to a prospective purchaser. Claiming a right of first refusal under 11 U.S.C. § 363(i), Linda Brollier now seeks to match this sale price and acquire the estate's interest in the property.

The issue presented is thus whether the spouse has a right of first refusal pursuant to § 363(i) to purchase the property at the proposed sale price? I conclude that she does.

### THE PLAIN MEANING DOCTRINE

■ The most obvious place to begin the analysis of this dispute is with the plain language of § 363(i). *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); and *In re ZRM–Oklahoma Partnership,* 156 B.R. 67 (Bankr.W.D.Okl.1993). The Supreme Court has concluded that the Bankruptcy Code is a coherent and consistent legislative enactment and directs lower courts to examine the plain meaning of individual provisions to interpret their scope. Under this methodology a court is directed to remain within a provision's language if that provision is unambiguous. *Ron Pair Enterprises, supra* 489 U.S. at 240–241, 109 S.Ct. at 1029–30; *ZRM–Oklahoma Partnership, supra* at 70. A provision is ambiguous only if its literal application produces a result "demonstrably at odds" with the legislative scheme. *See Griffen v. Oceanic Contractors,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982); *ZRM–Oklahoma Partnership, supra* at 70.

1. There is no room for interpretation when the meaning is "plain." Dig 32, 25, 1. The reference in the Digest is to a will, but the citation is used as a general maxim by civilians.

2. See also, *Rimmel v. Goldman (In re Goldman),* 111 B.R. 230, 233 (Bankr.E.D.Mo.1990) (Debtor husband and non-debtor wife who held property as tenancy by the entireties and fraudulently transferred it prior to filing of bankruptcy. His interest went to the bankruptcy estate and her interest was either paid over to her under 11 U.S.C. § 363(h) & (j) with her retaining her right of first refusal pursuant to § 363(i).) *Harkins v. Oswald (In re Oswald),* 90 B.R. 218, 225 (Bankr.

*Cum in verbis nulla ambiguitas est, non debet admitti voluntatis quaestio.*[1]

### THE PLAIN MEANING OF § 363(i)

Here it is not disputed that the interest in question is property of the bankruptcy estate under § 541. It is also undisputed that the trustee has a right to sell both the estate's interest and the interest of the co-owner in property in which the debtor had an undivided interest as a tenant in common, joint tenant, or tenant by the entirety in accordance with § 363(h). The issue concerns the meaning of 11 U.S.C. § 363(i) which reads:

> "Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was *community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.*"

Read as a whole § 363 indicates that Congress was providing a means by which the trustee could administer jointly owned property. Section 363(h) allows the trustee to sell both the debtor's and a co-owner's interest subject to certain conditions set out in § 363(h) and (i). Under the condition established in § 363(i), the trustee must provide the debtor's spouse or co-owner an opportunity to purchase community or co-owned property at the proposed sale price. *See In re Hunter,* 970 F.2d 299, 303 (7th Cir.1992) and *In re Oswald,* 90 B.R. 218, 225 (Bankr. N.D.W.Va.1988).[2]

N.D.W.V.1988) (Court found that the wife has the right of first refusal to purchase the property where both husband and wife owned one-half undivided interest in the real estate with survivorship.) Other cases where co-owners of property were permitted a right of first refusal are: *Gilbert v. Dixon (In re Gilbert),* 18 B.R. 579, 582 (Bankr.S.D.Ohio 1982); *In re Fehl,* 19 B.R. 310 (Bankr.N.D.Cal.1982); *Calumet Farm, Inc. v. Black Chip Stables (In re Calumet Farm, Inc.),* 150 B.R. 664, 675 (Bankr.E.D.Ky.1992); and *Community National Bank and Trust Co. of New York v. Persky (In re Persky),* 893 F.2d 15, 20 (2nd Cir.1989).

There are two avenues for one to qualify under § 363(i) and assert one's right of first refusal. They are to have (1) a spousal right in community property; or (2) a co-owner's right in property.

## SPOUSAL RIGHT TO COMMUNITY PROPERTY

■ The first inquiry is whether this is community property? Community property is not defined under § 101 of the Code. Therefore, one must examine the rules of statutory construction to garner a proper meaning. There are two manners of interpretation. First, the term "community property" as outlined in § 541. Second, the plain meaning of the term community property.

The first manner of interpretation is that § 541(a)(2) allegedly defines the term "community property." While statutory definitions may appear in the body of substantive sections, it has been held that § 541(a)(2) is not a definition of community property.[3]

Section 541 determines the property of the estate at the commencement of a bankruptcy case. Property of the estate is to be comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." Section 541(a)(2) then brings into the estate all interests of the debtor and the debtor's spouse in "community property" as of the commencement of the case that is (1) under the sole, equal or joint management and control of the debtor, or (2) is liable for an allowable claim against the debtor.

Some authorities hold the term community property pursuant to § 541(a)(2) to be applicable only to those nine "community property" states pursuant to § 541(a)(2).[4] 4 King, *Collier on Bankruptcy*, para. 541.15 (15th ed. 1986) and *Johnson v. Fisher (In re Fisher)*, 67 B.R. 666, 668 (Bankr.D.Colo.1986). Kansas is not one of those states. However, that limited application should not blindly and arbitrarily be adopted in this court.

Although this provision could be read to limit the property of the estate, I view it as a provision which determines what is included in the estate rather than a limitation. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S.Ct. 2309, 2312, 76 L.Ed.2d 515 (1983). Other courts have held similarly that § 541(a)(2) is merely a further clarification of the broad scope of § 541(a)(1). *See, In re Ford*, 3 B.R. 559, 569 (Bankr.D.Md.1980). While this provision may not be a definition it can be used as a guide. This court is of the opinion that § 541(a)(2) is a further clarification of the broad scope of § 541(a)(1) and its application not be limited to just those nine states.

■ The *Fisher* court determined that the phrase "community property" is a term of art. However, that case can be distinguished by the following intrinsic aid of statutory construction:

> [t]erms of art used in a statute are presumed to have their technical meaning. A difficulty arises when a term has both a common and a technical meaning, both equally well established. In this event ... the term is presumed to have its common meaning. Norman A. Singer, *Sutherland Stat. Const.* § 47.29 (5th ed. 1992).

Words are to be taken in their ordinary meaning unless they are technical terms or terms of art. Black, *Construction and Interpretation of Laws* § 63 (2nd ed 1911). In the words of Mr. Justice Frankfurter:

> Legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him. *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944).

Again, the common meaning of the term "community property" prevails. This court must next determine the meaning of the language in accordance with the common un-

---

**3.** "Community property" is not defined by the Code. *Fisher v. Johnson (In re Fisher)*, 67 B.R. 666 (Bankr.D.Colo.1986).

**4.** The nine states with "community property" systems are: Louisiana, Texas, New Mexico, Ari- zona, California, Washington, Idaho, Wisconsin and Nevada. The rest of the states, including Kansas and Oklahoma, are classified as common law jurisdictions.

derstanding of the term. For this reason, we turn to our second manner of interpretation or the "plain meaning" doctrine.

■ When a common word is used in a statute, but is not defined, the word should be given its common meaning. Norman A. Singer, *Sutherland Stat. Const.* § 47.28 (5th ed. 1992). It is a general rule of statutory construction that words of a statute will be interpreted in their ordinary acceptation and significance and the meaning commonly attributed to them. *Sutherland, supra;* and 73 Am.Jur.2d Statutes § 205 (1993). Hence, it is usual to interpret the words as taking on their ordinary, contemporaneous common meaning. As Mr. Justice Holmes stated:

> Thereupon we ask, not what this man meant, but what those words would mean in the mouth of a normal speaker of English, using them in circumstances in which they are used. *The Theory of Interpretation,* 12 Harv.L.Rev. 417, 419 (1899).

An objective basis for interpretation demands reliance upon reasonable and common meanings of language. The approved usage of words can be established by the definition of a recognized dictionary. *Sutherland, supra.*

Community property is defined as "property owned in common by husband and wife each having an undivided one-half interest by reason of their marital status." *BLACK'S LAW DICTIONARY* 351 (5th ed. 1979). Webster's Dictionary defines community property as "property held jointly by husband and wife." *WEBSTER'S INTERNATIONAL DICTIONARY* 460 (3rd ed. 1981). Therefore, the plain meaning of the term is property held in common this tract qualifies.

This definition is in accord with the express intent of the House Judiciary Committee in its Report where it stated it:

> The bill also changes the rules with respect to marital interest in property. Interests in the nature of dower and curtesy will not prevent the property involved from becoming property of the estate, nor will it prevent sale of the property by the trustee. With respect to co-owner interest, such as tenancies by the entireties, joint tenancies, and tenancies in common, the bill does not invalidate the rights, but pro-

vides a method by which the estate may realize on the value of the debtor's interest in the property while protecting the other rights. The trustee is permitted to realize on the value of the property by being permitted to sell it without obtaining the consent or waiver of rights by the spouse or the co-owner, as may be required for a complete sale under applicable state law. The other interest is protected under H.R. 8200 by giving the spouse the right of first refusal at a sale of the property, and by requiring the trustee to pay over to the spouse the value of the spouse's interest in the property ...

H.R.Rep. No. 95–595, 95th Cong. 2nd Sess. 82–3 (1977), House Report at 177, 1978 U.S.Code Cong. & Admin.News, 5787, 6137–6138. Adopting this community property definition, the Trustee must grant her a right of first refusal to purchase it at the proposed sale price.

Even more reason to adopt this approach is the general principle to favor uniform application of federal statutes throughout the nation. *Reconstruction Finance Corp. v. Beaver County,* 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946); *Jerome v. United States,* 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640 (1943); *Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942). It belies ordinary common sense to say that Congress would honor the rights of co-owners in only nine states of the Union and repudiate them in 41 others. Uniform application of federal law would mandate that community property be given a reasonable and fair use meaning. Therefore, the Trustee must grant her a right of first refusal to purchase this community property at the proposed sale price.

### CO–OWNER OF PROPERTY

■ The second avenue for asserting a right of first refusal is where the spouse can also acquire the property as a "co-owner of such property" under § 363(i). The bankruptcy court must turn to state law to define such property rights. *Johnson v. Fisher (In re Fisher),* 67 B.R. 666, 668 (Bankr.D.Colo.

1986); *In re Lloyd,* 18 B.R. 624 (Bankr. E.D.Penn.1982).

The court must thus determine whether Linda Brollier has an ownership interest in the property. Issues pertaining to marital property and the rights of the respective spouses are controlled by K.S.A. § 23–201 and have been discussed in the Kansas jurisprudence. K.S.A. § 23–201(a) mandates that all property which a person owns at the time of marriage is separate property. Further, under normal circumstances a spouse has no interest in the separate property of the other. *In re Oetinger,* 49 B.R. 41 (Bankr.D.Kan.1985). Certain events, such as divorce, can change the legal status of marital property so that all property acquired by either spouse becomes marital property. Subsection (b) of K.S.A. 23–201 defines marital property as:

> All property owned by married persons ·... whether described in subsection (a) or *acquired by either spouse after marriage, and whether held individually or by spouses in some form of co-ownership, such as joint tenancy or tenancy in common,* shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60–1610 and amendments thereto. K.S.A. 23–201(b).

K.S.A. 23–201(b) was enacted as a legislative reaction to the decision in *United States v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962) "where the United States Supreme Court held that inchoate rights granted to a wife in the separate property of her husband do not reach the dignity of co-ownership and thus the transfer to the wife pursuant to a property settlement agreement ... was a taxable event." *Wachholz v.*

*Wachholz,* 4 Kan.App.2d 161, 603 P.2d 647, 650 (1979) and similar holding in *Redmond v. Redmond,* 229 Kan. 565, 629 P.2d 142 (1981). In other words, the Kansas legislature was enacting a property right which rises to the dignity of co-ownership in order to prevent a property settlement from being a taxable event. Absent a divorce petition, these cases suggest that under normal circumstances one spouse has no interest in the separate property of the other. *In re Oetinger,* 49 B.R. 41 (Bankr.D.Kan.1985) and *Cady v. Cady,* 224 Kan. 339, 581 P.2d 358, 363 (1978).

That issue is different from the issue at hand. Linda Brollier does not claim an interest in her husband's separate property. She claims her interest arises as a co-owner.[5] This property was acquired after the marriage and it is undisputed that the property was acquired with marital funds. K.S.A. 23–201(b) indicates and common experience dictates that a married couple can acquire a co-ownership title in personal property as joint tenants or tenants in common. *In re Griffin,* 141 B.R. 207, 210 (Bankr.D.Kan.1992). Co-ownership of property acquired during the marriage is allowed pursuant to K.S.A. 23–201(b). *Griffin, supra* at 210. The courts must determine co-ownership from evidence of intent and conduct of the party claiming title, unless some rule of law prevents it. *Griffin, supra* at 210.

Therefore, the court must examine what evidence exists indicating intent and conduct of co-ownership. She has a right to possession and an interest in the property under K.S.A. 60–1001. In an civil action for possession under Kansas law, K.S.A. 60–1001 requires:

> "[I]n any action to recover possession of real property, including an oil and gas lease or mineral interest, it shall be sufficient if the petition state that the petitioner has a legal or equitable interest therein and the right to possession."

In addition, her interest in the property can be determined under K.S.A. 60–1002 which provides:

---

5. While Linda Brollier claims a tenancy by the entirety in the property, such property interest is not recognized in Kansas. *Hall v. Hamilton,* 233 Kan. 880, 667 P.2d 350 (1983) (Estates in entire-ty, also called tenancy by the entirety, abolished in Kansas in 1891.) For this reason, it is presumed that the interest intended is a tenancy in common.

"[A]n action may be brought by any person claiming title or interest in personal or real property, including oil and gas leases, mineral or royalty interests, against any person who claims an estate or interest therein adverse to him or her, for the purpose of determining such adverse claim."

Therefore, she has a right of action to determine her interest in the property as well. Here she claims an equitable interest in the property and a right to possession because it was undisputed that it was purchased with joint marital funds, acquired after the marriage, mortgaged by a lien in both James and Linda Brollier's name, paid rents and profits which both enjoyed during the marriage, and the reservation is in the name of both. This is all evidence of intent and conduct indicating co-ownership.

The trustee and successful bidder argue that because the interest was solely in the debtor-husband's name that Linda Brollier is not a co-owner or tenant in common. They do not, however, rebut this prima facie showing of equitable ownership in the property.

From the evidence presented, the court concludes that Linda Brollier was in possession of and held equitable title as a co-owner. The facts further demonstrate that: (1) acquisition of the property took place after the marriage; (2) the property was purchased with marital assets; and (3) Linda Brollier had an equitable interest in this property. She is thus a co-owner of the property and the trustee must grant her a right of first refusal to purchase it at the proposed sale price.

## CONTINUITY WITH THE STATUTORY SCHEME

To determine if there is ambiguity, the Court next directs that trial courts determine whether the plain meaning of the statute produces a result in conflict with the remainder of the Code. See Griffen, supra at 571; ZRM–Oklahoma Partnership, supra at 71. If the plain meaning does not conflict, then the provision is unambiguous and one should not look beyond its language. See Ron Pair Enterprises, 489 U.S. at 243, 109 S.Ct. at 1031; ZRM–Oklahoma Partnership, at 70. Therefore, the proper query is whether § 363(i) produces a result in conflict with the remainder of the Code?

The federal bankruptcy laws were enacted for the dual purposes of (1) discharging the indebtedness of honest debtors, so they will be afforded an unburdened opportunity to start afresh in their economic pursuits, and (2) providing a speedy and efficient means of distributing their assets equitably among their creditors. This legislative scheme is designed to maximize distributions to creditors and to provide a debtor with a fresh start.

The specific section in question has to do with partition which impliedly administers property held in common. The first refusal rights included in this statute were obviously inserted out of congressional concern about the harshness of the sale of a debtor's property on co-owners and spouses. See 1978 U.S.Code Cong. & Admin.News at 6137–38. This is consistent with the legislative scheme because the provision does not negatively affect distributions to creditors. If no relief for a co-owner or spouse was provided then creditors could receive a windfall from the proceeds of property owned by a non-debtor co-owner or non-debtor spouse. To deny these non-debtors a right of first refusal would effectively disfranchise them from their rights in that property. In fact, the right of first refusal policy is sensible because it allows a community to retain property.

Therefore, § 363(i) is unambiguous because it is found that it is not "demonstrably at odds" with the legislative scheme. See Griffen, supra at 571; ZRM–Oklahoma Partnership, supra at 71.

## CONCLUSION

Following this methodology I conclude that: (1) § 363(i) is unambiguous; and (2) under a plain reading of its language, the section is in harmony with the remainder of the Code. The plain meaning of § 363(i) directs the Trustee to allow Linda Brollier, as spouse and co-owner, a right of first refusal to purchase the property at the proposed sale price.

Accordingly, it is hereby ordered that the objection to notice of sale is granted and the trustee must sell the property to Linda Brollier for an amount not less than the offer he has previously received.