**In re Michael J. SKAGGS, Debtor.**

**Michael J. SKAGGS, Plaintiff,**

v.

**GREAT LAKES HIGHER EDUCATION CORP., Defendant.**

**Bankruptcy No. BK–95–15404–BH. Adv. No. 96–1053–BH.**

United States Bankruptcy Court, W.D. Oklahoma.

June 11, 1996.

Kenneth L. Spears, Oklahoma City, Oklahoma, for Debtor–Plaintiff.

Lloyd J. Blaney, Madison, Wisconsin, for Defendant.

### MEMORANDUM OF DECISION

RICHARD L. BOHANON, Bankruptcy Judge.

This proceeding is before the court on a complaint to determine dischargeability of a student loan debt of roughly $47,000. There are two distinct issues. The first is a question of law and concerns the extent of the authority of a bankruptcy court to discharge student loans pursuant to 11 U.S.C. 523(a)(8)(B)? Is the authority sufficiently broad and discretionary, as urged by the defendant, to include the power to discharge only part of a loan or to modify its terms? Or, is the court's authority restricted to a determination of whether or not the student loan, in its entirety, is discharged. The second issue is one of fact, viz., whether, given this plaintiff's financial circumstances, repayment of the loan would constitute an undue hardship pursuant to 11 U.S.C. § 523(a)(8)(B).

The threshold question of a court's authority must be answered first, and the logical beginning is with the language of the statute itself. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *In re ZRM–Oklahoma Partnership,* 156 B.R. 67 (Bankr.W.D.Okla.1993); and *In re Horwitz* 167 B.R. 237 (Bankr.W.D.Okla.1994). A court must confine the scope of its inquiry to the language of a particular statute unless it is ambiguous on its face. *Ron Pair Enterprises, supra* at 240–241, 109 S.Ct. at 1029–30; *ZRM–Oklahoma Partnership, supra* at 70. The language of a statute is ambiguous only if its literal application produces results "demonstrably at odds" with the legislative scheme. *See Griffin v. Oceanic Contractors,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982); *ZRM–Oklahoma Partnership, supra* at 70; *Horwitz, supra* at 239; and *In re Brollier,* 165 B.R. 286, 288 (Bankr. W.D.Okla.1994).

These principles apply to the interpretation of section 523(a)(8)(B). It provides that a qualifying student loan "debt" is excepted from discharge unless repayment would impose an "undue hardship" on the debtor and his or her dependents.

On its face this provision is clear, unambiguous and does not conflict with the overall scheme of the Bankruptcy Code. "Debt" is defined in section 101(12) of the Bankruptcy Code as "liability on a claim." Plainly understood, "liability on a claim" encompasses the entire liability, not merely some portion of the debt or merely selected terms of repayment. Congress might have used language to authorize the discharge of partial liability or the modification of conditions of liability but did not. Section 523(a)(8)(B) itself limits a court's power to act only on the entire student loan obligation.

This court recognizes that some other bankruptcy courts have been willing to modify student loan terms or discharge portions of the debt. These courts have interposed broad equitable powers when applying section 523(a)(8)(B) [1], stating their disapproval of the "inequity" which can result from a strict application of section 523(a)(8)(B). The perceived inequity, according to these courts, is the rewarding of irresponsible debtors who create their own hardship by borrowing excessively and unrealistically for their education by discharging their student loans, while punishing the debtor who has borrowed

1. *See In re Littell,* 6 B.R. 85 (Bankr.D.Or., 1980); *In re Albert,* 25 B.R. 98 (Bankr.N.D.Ohio, 1982); *In re Brown,* 18 B.R. 219 (Bankr.D.Kan., 1982); *In re Silliman,* 144 B.R. 748 (Bankr.N.D.Ohio, 1992); *In re Archie,* 7 B.R. 715 (Bankr.E.D.Va., 1980); and *In re Webb,* 132 B.R. 199 (Bankr. M.D.Fla., 1991); *Griffin v. Oklahoma State Regents for Higher Education, et al.,* 197 B.R. 144 (Bankr.E.D.Okla., 1996).

more frugally and for whom, therefore, repayment is not an "undue hardship."

Although the policy argument that an irresponsible debtor should not be rewarded is interesting, it is an argument better made to Congress than to the courts. The courts are not granted power to remedy perceived defects in legislation by the failure of Congress to legislate precisely or equitably. If application of statutory provisions as written causes "untoward, unwelcome, arbitrary or fortuitous results, it is for Congress to deal with any perceived bad policy." *Horwitz, supra* at 240.

■ So the court's authority to determine dischargeability of student loans is limited strictly to a determination of whether a discharge of the entire debt is required. This conclusion brings the remaining factual question into focus, viz., would repayment of the obligation in this case act as an "undue hardship" on the plaintiff and his dependents?

■ "Undue hardship" is not defined in the Bankruptcy Code. Courts have responded to this lack of a definition by formulating and applying of a variety of tests depending upon the facts of the particular case.[3] These tests or standards are employed because, in this context, section 523(a)(8)(B) is a discreet statute as opposed to one which is absolute. As the name suggests, discreet enactments are those which require the exercise of some measure of discretion when applying the statute. Absolute statutes, on the other hand, "would be those which contain within their wording all that is necessary to make the decision." *Horwitz, supra,* at 241. Section 523(a)(8)(B) is a prime example of a discretionary statute. Because "undue hardship" is not defined, the overall facts and equities of the case will affect a judge's determination of whether or not repayment of a student loan would impose an undue hardship. This theorem of statutory interpretation is equally useful in cases such as this where part of the statute is absolute in its terms and another part is discreet and where some terms are defined and others not.

■ In the application of the undefined "undue hardship" requirement, sufficient guidance is found in the plain, ordinary meaning of those words. For, when common words are used in statutes, principles of statutory construction require that the words be given their common and ordinarily accepted meaning. *See* Norman A. Singer, *Sutherland Stat. Const.* § 47 (5th ed. 1992); 73 Am.Jur.2d. *Statutes* § 205 (1993); and *In re Brollier, supra,* at 288. The common sense approach to whether or not repayment of a student loan under the facts in a particular case amounts to an undue hardship is, in itself, a sufficient guide to the exercise of judicial discretion under § 523(a)(8)(B).

The student loan in this case, amounting to roughly $47,000, was incurred by the plaintiff to pursue a Bachelors of the Arts degree in history, some law studies, and a Masters degree in education. When family and economic pressures made the Masters degree impossible, plaintiff returned to school, closer to home, to seek a teaching certificate. Despite vigorous and good faith efforts, he was unable to secure a full-time, permanent teaching position. The plaintiff, therefore, accepted a position at an insurance agency, earning $20,000 a year, which he testified is roughly equivalent to the starting salary for a secondary school teacher. The plaintiff's wife, partially employed at the time of filing, is now employed full-time, earning less than $16,000 a year.

The couple has three children, ages 17, 8, and, 5 and three high mileage-vehicles which require frequent repairs. The third vehicle is used by the 17–year–old who is responsible for transporting the younger children to and from school. The family lives in a mobile home, for which they pay $200 a month, a low monthly housing expenditure for a family of five by any standard. Food for the family is purchased on sale, with coupons, and clothing is acquired at discount stores and garage sales. Necessary, outside child care for the youngest child is kept to a minimum by reliance on extended family. The family

**3.** *See In re Bryant,* 72 B.R. 913 (Bankr.E.D.Pa. 1987); *In re Johnson,* 5 B.C.D. 532 (Bankr. E.D.Pa.1979); *In re Raimondo,* 183 B.R. 677 (Bankr.W.D.N.Y.1995); *In re Sands,* 166 B.R. 299 (Bankr.W.D.Mich.1994); and *In re Brunner,* 46 B.R. 752 (Bankr.S.D.N.Y.1985).

does not vacation, eat out, or attend movies, and rarely seeks medical attention.

Overall, the evidence in this case is somewhat dramatic, ultimately demonstrating that even if the expenses challenged by the defendant were removed from the budget, the plaintiff would, at present, have income barely sufficient to meet his family's reasonable expenses. The figures offered in the monthly budget, including all expenses, reflect a deficit of more than $150 a month between the combined monthly income and what is paid out.

The remaining issue, thus, is whether these undeniably hard circumstances rise to such a level that repayment of the student loan would be an "undue hardship." The plaintiff and his family live in an extraordinarily frugal manner and are currently unable to make ends meet. If "undue hardship" means anything under a common sense definition, repayment of the $47,000 student loan in this case must be viewed as imposing an undue hardship on the plaintiff and his family.

The student loan is, therefore, discharged and judgment will be entered in favor of the plaintiff.