In re Stephen F. KIEFFER, Paula Kieffer, Debtors.

No. 01–41775.

United States Bankruptcy Court, D. Kansas.

June 19, 2002.

**292**

Charles T. Engel, Cosgrove, Webb & Oman, Topeka, KS, for Debtors.

Eric C. Rajala, Overland Park, KS, trustee.

### MEMORANDUM OPINION AND ORDER

ROBERT NUGENT, Bankruptcy Judge.

This case comes before the Court on the debtors' motion to avoid liens filed pursuant to 11 U.S.C. § 522(f)(1)(B).[1] This matter requires the Court to construe the "tools of the trade" exemption under Kansas law.

The debtors each claim a $7,500 exemption for farming tools of the trade pursuant to K.S.A. 60–2304(e) and seek to avoid the lien of Frontier Farm Credit, PCA ("Farm Credit") on certain farm equipment. Farm Credit objects to the debtors' motion contending that debtor Paula Kieffer is not a farmer and therefore, not entitled to a $7,500 tool of the trade exemption in the farm equipment. The issue presented is whether Paula is engaged in farming as her principal trade or occupation, is entitled to a tool of the trade exemption in farm equipment, and may avoid Farm Credit's lien. The Court held an evidentiary hearing on April 8, 2002 and is now prepared to rule.

Paula has been employed outside the debtors' farming operation as a nurse (LPN) at the Cloud County Health Center ("CCHC") since 1990. She works nine out of every ten working days at CCHC, working five days in one week and four days the next week. She is entitled to vacation or leave from her nursing job as needed and can therefore be on the farm at peak times of the farming operation. Paula earned $21,408 from her nursing job at CCHC in 2000 and $20,068 from her nursing job at CCHC in 2001. The W–2s attached to the debtors' 2001 tax return show that Paula also worked at Clay County Medical Center and received wages of $686. The 2001 tax return lists total wages of $30,408, but the record does not indicate whether any of the wages above those evidenced by Paula's W–2s are attributable to her.

The debtors' tax returns for the years 2000 and 2001 listed Paula's occupation as a nurse and Stephen's occupation as a farmer. Only Stephen was listed on Schedule F (Profit or Loss from Farming) of the debtors' tax returns. The debtors' respective occupations were similarly de-

---

1. All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq. unless otherwise specified.

scribed in Schedule I of their bankruptcy schedules.

Schedule F of the debtors' tax return for 2000 shows gross income of $167,183 from farming and net income of $5,300. The debtors claimed depreciation expense of $20,582 for 2000. If the depreciation expense—a "paper" deduction for tax purposes—is added back, the net income from farming was $25,882 in 2000. Schedule F for 2001 reflects gross income from farming of $102,385 and net income of $8,141. Depreciation expense of $34,664 is claimed for 2001. Without the depreciation deduction, the net income from farming was $42,805 in 2001.

Paula acknowledged that the net farm income, not gross, is the amount that farming contributes to support of the household. Paula also admitted that depreciation was a legitimate expense to consider for calculating net income.

Debtors filed their Chapter 12 bankruptcy petition on July 9, 2001. On Schedule C of the debtors' bankruptcy petition, the debtors claimed a $15,000 tool of the trade exemption for livestock. In their motion to avoid liens, however, the debtors claimed a $15,000 tool of the trade exemption for certain farm equipment, to-wit: a Gehl mixer feeder wagon ($7,500), John Deere 4010 ($4,500), load out panels ($300), four cement feed bunks ($300), and Linn squeeze chutes ($2,400). It is unclear from the record, and the debtors have not designated, those item(s) of farm equipment which are attributable to Stephen's exemption and those item(s) of farm equipment which are attributable to Paula's claimed exemption. Farm Credit concedes that the farm equipment at issue here is collateral for the debtors' indebtedness to Farm Credit. Farm Credit does not contend or provide any evidence that the note and security agreement evidencing its claim were not signed by Paula.

Paula described the nature of the debtors' farming operation. The debtors lease 600 acres on which they grow wheat, milo and corn. They also rent pasture and raise cattle. Paula testified that although she has worked at her off-farm nursing job since 1990, she also worked on the farm with her husband. She worked cattle, moved machines, did the bookkeeping and check-writing for the farm, and brought lunch out—tasks commonly performed by farm wives. She made farming decisions jointly with Stephen, such as when to buy and sell cattle and how to finance farm operations. She frequently signed promissory notes and security agreements to creditors for farming operations.[2] Paula considers herself a co-owner of the real and personal farm property with Stephen.

## ANALYSIS

The debtors filed their motion to avoid the lien of Farm Credit pursuant to § 522(f)(1)(B) which provides, in pertinent part:

> ... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—... (B) a nonpossessory, nonpurchase-money security interest in any—... (ii) implements, professional books, or tools, of the trade of the debtor ...

Each of the debtors claimed a $7,500 tool of the trade exemption in farm equipment pursuant to K.S.A. 60–2304(e). The

---

**2.** There appears to be no argument that Paula signed the notes and security agreements pertaining to the farm equipment at issue here and comprising part of Farm Credit's collateral.

"tools of the trade" exemption provided under Kansas law states:

> Every person residing in this state shall have exempt ... (e) The tools, implements and equipment, ... or the other tangible means of production regularly and reasonably necessary in carrying on the person's profession, trade, business or occupation in an aggregate value not to exceed $7,500.

No contention is made that the items of equipment which the debtors claim as exempt do not qualify as tools of the trade of farming. Farm Credit does not dispute that Stephen is principally engaged in farming and entitled to the $7,500 exemption and lien avoidance. Farm Credit also concedes that its lien on the subject farm equipment is a nonpossessory, nonpurchase-money lien. Farm Credit argues that Paula is principally engaged in nursing, not farming, and therefore, not entitled to the $7,500 tool of the trade exemption in farm equipment nor entitled to avoid Farm Credit's lien.

It is well-established that the exemption laws are to be construed liberally in favor of exemption. *In re Mueller*, 71 B.R. 165, 167 (D.Kan.1987), *aff'd* 867 F.2d 568 (10th Cir.1989). Moreover, once an exemption is claimed, the burden is on the party objecting to prove that the exemption is not properly claimed. *In re Zink*, 177 B.R. 713, 714 (Bankr.D.Kan.1995); Fed. R. Bankr.P. 4003(c). A debtor's right to an exemption is determined as of the date the bankruptcy petition is filed. *In re Currie*, 34 B.R. 745, 748 (D.Kan.1983). In this case, the relevant time period is 2001.

A debtor may claim a tools of the trade exemption for only one trade or occupation. *Zink*, 177 B.R. at 715. Where a debtor is engaged in more than one trade, business or occupation, the tools of the trade exemption is applicable only to the trade or occupation in which the debtor is principally or primarily engaged. *Zink*, 177 B.R. at 715; *Seel v. Wittman*, 173 B.R. 734, 736 (D.Kan.1994).

Accordingly, this Court must make a factual determination from the evidence before it whether Paula's principal occupation is that of a nurse or a farmer. The case law provides the Court with some guidance in making this determination. The Court may consider from which occupation the debtor derives his or her principal support. *See Seel*, 173 B.R. at 737.

In determining whether Paula derives her principal support from nursing or farming, Farm Credit urges this Court to compare the *net* income derived from farming activities to Paula's wages from her nursing job. No clear rule has been established whether gross income or net income should be examined in comparing the debtor's occupations. Nor does the case law suggest that a mathematical formula or bright-line test can be applied to determine principal support. It appears to this Court that a comparison of net income from a self-employed farming operation to income earned by a wage earner is not a fair comparison due to the availability of business expenses and deductions by the farming operation. A wage earner does not typically have deductible business expenses. While the debtor's tax returns are relevant, they are not controlling in determining the tools of the trade exemption. *In re Zimmel*, 185 B.R. 786, 789 (Bankr.D.Minn.1995).

For the year 2001, based upon Paula's W-2s, Paula's wages or gross income from her nursing job was $20,754. The gross income derived from the farming operation in 2001 was $102,385. The net income derived from the farming operation in 2001 was $42,805, without deducting de-

preciation expense. Notwithstanding Paula's testimony that depreciation expense is a legitimate business expense of farming and is properly deducted to arrive at net income, the depreciation expense is irrelevant in the Court's determination. *See Seel*, 173 B.R. at 737. (It is inappropriate to include the depreciation expense deduction claimed on the tax return because it does nothing to demonstrate which business is actually producing support for the debtors.).

Farm Credit focuses almost exclusively on a comparison of income figures. Farm Credit does not suggest what percentage of the farming income may be attributable to Paula based upon her testimony concerning her involvement in the farming operation. While Paula testified that she considered herself a co-owner of the farm equipment, that she co-signed loans and security agreements for the farming operation with her husband, did the bookkeeping, and that she actively participated in farming decisions, she also testified that she did not perform one-half of the actual farm labor or work. Even if this Court finds that less than 50% of the income from farming is attributable to Paula, the calculations and comparisons of income do not support a finding that Paula derives her principal support as a nurse. If only 40% of the gross farm income is attributable to Paula, she derives $40,954 from her farming occupation—nearly twice that of nursing. Forty percent of the net farm income is $17,122. However, the Court does not believe that Paula's contribution of actual labor or percentage of time spent in the farming operation is the sole criterion for determining the amount of income that should be attributable to her. The Court believes that the other farm-related activities performed by Paula, coupled with her actual farm labor, amply supports a finding that Paula contributes or jointly participates 50% in the debtors' farming endeavor. Thus, the Court finds

that Paula is principally engaged in farming and derives her principal support from farming. *See also, Zink, supra* (debtor farm wife who was also licensed beautician was principally engaged in farming); *In re Kobs*, 163 B.R. 368 (Bankr.D.Kan.1994) (debtor farm wife who held off-farm job as a librarian was principally engaged in farming).

The Court has carefully reviewed the recent decision in *In re Lampe*, 278 B.R. 205 (10th Cir. BAP 2002) and has considered it in the context of ownership of the tools of the trade. *Lampe* does not compel a different result here.

In *Lampe*, the bankruptcy court found that the debtors were principally engaged in farming but denied the Kansas tools of the trade exemption to the debtor farm wife on the basis that she had no co-ownership interest in the tools of the trade. The debtors appealed. The Bankruptcy Appellate Panel reversed the denial of the exemption to the debtor wife, concluding:

> ... [B]ased on the evidence of the Debtors' intent, their conduct in carrying on the farming operation, in purchasing the equipment from a joint account funded by earnings from the farm, and in and [sic] pledging the equipment together as security for operating loans, Sheila Lampe co-owned the property for purposes of the tools of the trade exemption.

278 B.R. at 213.

The Panel in *Lampe* discussed the ownership requirement implied in the tools of the trade exemption. It recognized that Kansas' tools of the trade exemption does not specify the quantum of ownership required for a debtor to qualify for the exemption. Nor does the Kansas exemption specify the nature of the ownership interest required. The Panel observed that courts have held that ownership of the property claimed as exempt, is implied in

the exemption statutes. Kansas is in accord. *See Zink,* 177 B.R. at 714–15; *Kobs,* 163 B.R. at 373.

The Panel concluded, however, that the bankruptcy court had taken an overly restrictive view of the ownership requirement in concluding that the debtor wife had no co-ownership interest in the farm equipment. The bankruptcy court had relied on the debtors' tax returns which listed debtor husband as the sole proprietor of the farm and thus concluded that the debtor husband was the sole owner of the farm equipment, even though the debtor testified that the equipment had been acquired with money from the farming operation that had been deposited in the debtors' joint account. There was also evidence that both debtors signed the notes and security agreements to finance the operations and for which the farm equipment was listed as collateral. Finally, the debtor husband testified that he and his wife considered everything they had half and half.

The bankruptcy court in *In re Brollier,* 165 B.R. 286 (Bankr.W.D.Okla.1994) discussed co-ownership of personal property by a married couple under Kansas law.

K.S.A. 23–201(b) indicates and common experience dictates that a married couple can acquire a co-ownership title in personal property as joint tenants or tenants in common. *In re Griffin,* 141 B.R. 207, 210 (Bankr.D.Kan.1992). Co-ownership of property acquired during the marriage is allowed pursuant to K.S.A. 23–201(b). *Griffin, supra* at 210. . . .

Therefore, the court must examine what evidence exists indicating intent and conduct of co-ownership.

*Id.* at 291. *See also, Zink,* 177 B.R. at 715; *Kobs,* 163 B.R. at 373.

In *Lampe,* given the evidence and the bankruptcy court's findings that both debtors worked on the farm and engaged in farming activity on a daily basis, the Panel characterized the debtors' farming operation as . . .

not a partnership in the legal sense, but a family business operated as a proprietorship with each Debtor as a co-owner of the equipment.

278 B.R. at 214. The Panel also noted the rule that exemption laws are to be liberally construed in favor of those claiming the exemption.

The case before this Court stands on similar footing. In addition to the liberal construction of the exemption laws, the Court is mindful of the parties' burden of proof under Fed. R. Bankr.P. 4003(c).

Once an exemption has been claimed, it is the objecting party's burden to prove that the exemption is not properly claimed.

*In re Gregory,* 245 B.R. 171, 174 (10th Cir. BAP 2000).

The evidence presented to this Court concerning ownership of the farm equipment was very similar to the evidence in *Lampe.* Moreover, Farm Credit did not rebut Paula's testimony concerning her co-ownership of the farm equipment. *See Kobs,* 163 B.R. at 373 (debtor farm wife's unrebutted testimony of ownership satisfies the exemption statute; the creditor presented no evidence to show that debtor farm wife was not the owner of the machinery). With respect to the farm operation, Paula made decisions jointly with Stephen, such as when to buy and sell cattle and how to finance farm operations. She signed notes and security agreements to creditors for farming operations, including the notes and security agreements granted to Farm Credit. Paula considered herself a co-owner of the real and personal farm property with Stephen. Only the debtors' tax returns and schedules prepared by an outside tax preparer identify Stephen as the sole proprietor of the farm operation. As in *Lampe,* the above evi-

dence supports and compels the conclusion that Paula co-owned the farm equipment with Stephen.[3] Accordingly, Paula may claim an exemption in the farm equipment as tools of the trade.

Based upon the evidence and law recited above, the Court finds that debtor Paula Kieffer had an ownership interest in the farm equipment, was principally engaged in farming, is entitled to a $7,500 tools of the trade exemption in the farm equipment under Kansas law, and may avoid Farm Credit's lien on the subject farm equipment. The debtors' motion to avoid the lien of Farm Credit is granted.

---

**3.** Alternatively, this Court concludes that Paula had an ownership interest in the farm equipment by virtue of her contingent property interest in separate personal property as a spouse in the marital relationship. *See Lampe,* 278 B.R. at 215–16. (Concurring opinion).