**In re Scott D. THOMPSON and Merri Beth Thompson, Debtors.**

No. 03–25317–13.

United States Bankruptcy Court, D. Kansas.

July 13, 2004.

Jason A. Norbury, Wagoner Bankruptcy Group, P.C., Kansas City, MO, for Debtor.

## MEMORANDUM OPINION [1]

ROBERT D. BERGER, Bankruptcy Judge.

This matter comes before the Court on the Standing Chapter 13 Trustee's Objection to Debtors' Claims for Exemption (Doc. # 13) of equipment necessary to raise game birds as tools of the trade. An evidentiary hearing was held before this Court at which debtor Merri Beth Thompson testified. At the hearing, the Chapter 13 Trustee withdrew his objection to the debtors' homestead exemption. The Court issued its preliminary ruling from the bench regarding the claimed tools-of-trade exemption and sets out its detailed findings of fact and conclusions of law in this Memorandum Opinion.

## FACTS

■ The debtors' residence and two barns are situated on 60 acres of land they own outside the city limits. Some portion of this land is used for farming operations, such as growing hay, the grazing of cattle, the growing of crops, and the harvesting of timber to sell. For at least the three years prior to the filing of their bankruptcy, the Thompsons also raised game birds for resale. On the petition date, the Thompsons were not actively engaged in

1. Debtors appear by their attorney, Jason A. Norbury of Wagoner Bankruptcy Group, P.C., Kansas City, Missouri. The Standing Chapter 13 Trustee, William H. Griffin, appears on his own behalf.

this operation because they were forced to sell their inventory of game birds prior to the filing of their bankruptcy to make ends meet. However, on the petition date, the Thompsons intended to resume this operation once they were able to accumulate the necessary capital of $1,000. This temporary halt to their business is not fatal to the successful exemption of tools of the trade related to that business.[2] The Thompsons have retained the equipment necessary to resume this aspect of their farming enterprise and it is this equipment they seek to exempt as tools of trade.

The Thompsons filed their Chapter 13 bankruptcy petition on December 23, 2003. The Schedule F (Profit or Loss from Farming) from the Thompsons' 2001 income tax return shows gross income from the sale of game birds of $22,135 and net income of $2,145. The Thompsons' tax year 2002 Schedule F reflects gross sales of farm products of $11,801 and a tax loss of $2,768. At the time of the hearing, the 2003 income tax return had not been prepared by the Thompsons; however, evidence at the hearing reflected the following for the year 2003: total sales for cows of $2,474.10; total sales for game birds of $977.00.

The gross wages reflected on the debtors' 2001 income tax return is $42,355 and on the 2002 income tax return is $46,313. The Statement of Financial Affairs filed by the Thompsons in their bankruptcy reflects year-to-date wages and farm income for both debtors in the amount of $35,000 through the petition date (December 23, 2003).

■ To determine whether a farming activity is a business for income tax pur-

poses, the objective of the enterprise must be to make a profit.[3] However, the expectation of profit need not be reasonable and it is sufficient if a small chance of making a big profit exists.[4] Based on this criterion, the Thompsons' farming enterprise appears to constitute a business for income tax purposes.

To raise game birds, the Thompsons need incubators, breeders, feeders, and heaters. They valued these items at $7,000 on their bankruptcy schedules and exempted same on their Schedule C. The Thompsons have sold as many as 10,000 game birds per year and maintain on their land a small cattle herd of six cows. The Thompsons grow alfalfa on their land to feed game birds. The Thompsons use one of the barns located on their land to raise game birds. The other barn is allocated to feed storage.

Mr. Thompson devotes almost 40 hours per week to the farm enterprise, or the equivalent of a full-time job. Ms. Thompson devotes 20 hours per week to the enterprise. Neither the gross income nor the net income from the farm enterprise exceeds that earned from the debtors' outside employment. However, it is common for farmers to procure non-farm employment. Mr. Thompson has full-time non-farm employment; Mrs. Thompson works part-time at a non-farm job. There is sufficient evidence to conclude that the Thompsons engaged in farming business during the years 2001, 2002, and 2003.

### DISCUSSION

■ When an exemption of property is asserted by debtors on their Schedule C, the burden of proof is upon the objecting

---

**2.** See *In re Lampe,* 278 B.R. 205 (10th Cir. BAP 2002).

**3.** See 1 *Nichols Cyclopedia of Legal Forms Annotated* § 1.1158.60.

**4.** See *id.*

party to establish that the exemption is not properly claimed.[5] A debtor's entitlement to claim an exemption of property is determined as of the bankruptcy petition date.[6] Pursuant to K.S.A. 60–2304(e), the Kansas tools-of-trade exemption reads as follows:

Every person residing in this state shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state, the following articles of personal property:

. . . .

(e) The books, documents, furniture, instruments, tools, implements and equipment, the breeding stock, seed grain or growing plants stock, or the other tangible means of production regularly and reasonably necessary in carrying on the person's profession, trade, business or occupation in an aggregate value not to exceed $7,500.

Although cognizant of the traditionally liberal construction of exemption statutes in Kansas, it is not the role of this Court to expand an exemption beyond that reasonably contemplated in the statute. Conversely, it is not within the province of this Court to create a restriction to an exemption statute that does not exist or otherwise to constrict improperly the protective umbrella of the exemption. It is the latter that this Court respectfully suggests has occurred in cases that have narrowed the tools-of-trade exemption to require that

the property be used in the debtor's principal profession, trade, business or occupation, a requirement that does not expressly appear in the statute.[7]

 The court in *Jenkins* interpreted a tools-of-trade exemption that was very similar to the current Kansas version. The court stated that Kansas exemption laws should be liberally construed and, in the same decision, vitiates this mandate by reading into the tools-of-trade exemption a limitation not expressly stated in the statute (*i.e.*, the principal profession, trade, business or occupation requirement). If the language in the tools-of-trade exemption lends itself to more than one reasonable interpretation, this Court is inclined to adopt a broader interpretation that honors the long-standing policy to construe liberally Kansas exemption laws. "The exemption laws are to be liberally construed, so as to effect the humane purpose of the legislature enacting them ..."[8] and to protect the debtor's family from destitution. When the Kansas legislature has seen fit to limit an exemption to one item, it has done so.[9] The court in *Jenkins* was concerned that a person may attempt to "by multiplying his employments, claim cumulatively several exemptions, created by the statute for several distinct employments."[10] However, this Court does not share the *Jenkins* court's concern. Regardless of the number of businesses and vocations the debtor may engage in, the total value of the exemptions for all of

5. *See In re Kieffer*, 279 B.R. 290, 294 (Bankr. D.Kan.2002), and Fed. R. Bankr.P. 4003(c).

6. *Kieffer*, 279 B.R. at 294.

7. *See, e.g., Jenkins v. McNall*, 27 Kan. 532, 1882 WL 983 (Kan.) (1882), *In re Massoni*, 67 B.R. 195 (Bankr.D.Kan.1986), *In re Lampe*, 278 B.R. 205 (10th Cir. BAP 2002).

8. *Jenkins v. McNall*, 27 Kan. 532, 1882 WL 983 (Kan.) (1882).

9. *Compare* K.S.A. 60–2304(c) which limits the $20,000 exemption to one means of conveyance *and* K.S.A. 60–2313(a)(1) which does not contain such a limitation and refers to the protection of "any pension, annuity, retirement, disability, death or other benefit exempt from process pursuant to [statutory cites omitted]"; *see also* K.S.A. 60–2308(b).

10. *Jenkins*, 27 Kan. at 532.

those is limited to $7,500. This Court's interpretation does not allow the stacking of exemptions, but simply allows the $7,500 tools-of-trade exemption split between one or more businesses or vocations. If the Kansas exemptions are to be read in a manner most favorable to the debtors, it is appropriate to allow the debtors to exempt tools of trade in one or more vocations and legitimate business enterprises. This application of the tools-of-the-trade exemption does less violence to the policy, spirit, and plain reading of the statute.

 Regardless, under the "principal occupation" test, the Thompsons' tools-of-trade exemption for the game bird equipment is proper. To glean a debtor's principal occupation, the court may consider a variety of factors, including the occupation from which the debtor derives his or her principal support, the contribution of the debtor's labor to the farming operation, the percentage of time spent in the farming operation, and the other farm-related activities performed by the debtor.[11]

 It is appropriate to allow the Thompsons to exempt the equipment used in a farming enterprise to which they devote considerable energy and personal resources. The farming enterprise represents Mr. Thompson's principal trade or business. However, even if it were not the debtors' principal trade or business, this Court would still be inclined to allow the exemption. The Thompsons' farming enterprise is a legitimate business upon which the tools-of-trade exemption may rest. The debtors should be able to claim the tools-of-trade exemption for one or more economic endeavors that represent a legitimate business enterprise. The test should be whether each of an individual's businesses and vocations has a legitimate business or profit motive, and, if so, the

property so used may be protected up to a maximum exemption per person of $7,500. The Thompsons seek a total tools-of-trade exemption in the amount of $7,000 which is less than the statutory ceiling of $7,500.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed. R. Bankr.P. 7052 and Fed. R.Civ.P. 52(a). A judgment reflecting this ruling will be entered on a separate document in compliance with Fed. R. Bankr.P. 9021 and Fed.R.Civ.P. 58.

IT IS SO ORDERED.

---

11. *See Kieffer,* 279 B.R. at 294–95.