**In re Michael Lee LEWIS, Debtor.**

**Russell Cobb and Laura Cobb, Plaintiffs–Appellees,**

**v.**

**Michael Lee Lewis, Defendant–Appellant.**

BAP No. KS–01–030.
Bankruptcy No. 99–20731.
Adversary No. 99–6088.

United States Bankruptcy Appellate Panel for the Tenth Circuit.

Jan. 8, 2002.

10. An order granting the landlord's motion previously has been entered.

Submitted on the briefs:*

Larry E. Schneider, Topeka, Kansas, for defendant-appellant.

Sharon L. Stolte, Morrison & Hecker, LLP, Overland Park, Kansas, for plaintiffs-appellees.

Before McFEELEY, Chief Judge, CLARK, and MICHAEL, Bankruptcy Judges.

OPINION

McFEELEY, Chief Judge.

Debtor/Appellant Michael L. Lewis ("Debtor") appeals the order/judgment of the United States Bankruptcy Court for the District of Kansas that granted summary judgment for creditors Russell W. and Laura Cobb ("Cobbs," unless referred to individually) on the issue of whether the Debtor's debt to the Cobbs was nondischargeable under 11 U.S.C. § 523(a)(2)(A).[1] Debtor argues the following: 1) the bankruptcy court erred when it found that it was collaterally estopped by a state bar disciplinary hearing from reconsidering the issue of intent under § 523(a)(2)(A) and granted summary judgment in favor of the Cobbs; 2) the bankruptcy court erred when it allowed the Cobbs under bankruptcy rule 7015 to amend their complaint to allege a non-

---

* After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R.Bankr.P. 8012; 10th Cir. BAP L.R. 8012–

1(a). The case is therefore ordered submitted without oral argument.

1. Unless otherwise noted, all future statutory references are to title 11 of the United States Code.

dischargeability action when the time for objections had expired. For the reasons stated below, we reverse on the first issue and affirm on the second.

## I. Appellate Jurisdiction

The Bankruptcy Appellate Panel has jurisdiction over this appeal. The bankruptcy court's judgment disposed of the adversary proceeding on the merits and is a final order subject to appeal under 28 U.S.C. § 158(a)(1). *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). The Debtor timely filed his notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8002. The parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the District of Kansas. 28 U.S.C. § 158(c)(1); Fed.R.Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

## II. Standard of Review

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *see* Fed. R.Bankr.P. 8013; *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir.1996).

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *Spears v. St. Paul Ins. Co. (In re Ben Kennedy and Assocs., Inc.)*, 40 F.3d 318, 319 (10th Cir.1994). The granting of a motion to amend a pleading under Rule 7015 is reviewed for an abuse of discretion.

*LeaseAmerica Corp. v. Eckel*, 710 F.2d 1470, 1473 (10th Cir.1983).

## III. Background

The Cobbs are holders of an unsecured claim of $2,273,333.33 ("Claim") against the Debtor. The Claim stems from a default judgment entered on April 22, 1997, by the District Court of Shawnee County, Kansas ("district court")[2] in a civil action for negligent malpractice, breach of contract, and loss of consortium.

The Claim resulted from the events surrounding an automobile accident that occurred on August 13, 1994. In that accident, Russell Cobb suffered great bodily injury, including brain damage. The subsequent medical bills for Mr. Cobb exceeded one million dollars. The accident was determined to be the fault of the other driver, John Celuch ("Celuch"). Celuch's insurance policy limit was $100,000.00.

The Cobbs retained Dan Lykins ("Lykins") to represent them in a personal injury action against Celuch. For the personal injury action, Lykins planned to charge the Cobbs an hourly fee instead of a contingency fee because the amount they would receive from the insurance coverage was small with respect to the total amount of their damages. At the time of the accident Mr. Cobb was employed by Flexel, which provided their employees with ERISA insurance coverage. By virtue of the ERISA coverage, Flexel had a lien on any amounts recovered from Celuch. In hopes of obtaining an additional recovery for the Cobbs, Lykins planned to pursue a products liability claim against the manufacturer of the Cobbs' car. Towards that end, Lykins had consulted with an expert witness about examining the crash worthiness of the car.

---

**2.** Case No. 96 CV 256.

After the Cobbs had hired Lykins, the Debtor spoke with Laura Cobb. She told the Debtor that she and her husband had hired Lykins to represent them in their personal injury action. The Debtor told her that Lykins was an ambulance chaser and that the Debtor could recover a million dollars for them on their lawsuit. Following this conversation, the Cobbs terminated Lykins's service and hired the Debtor to represent them in their personal injury action. By this time, Lykins had substantially completed the work in obtaining the $100,000 policy limit from Celuch's insurance company.

The Debtor collected the personal injury settlement from the insurance company. He charged the Cobbs approximately $34,000 for this service. He advised the Cobbs that the crash worthiness theory that Lykins had proposed was not worth investigating and suggested that they get rid of the damaged car, which they did. The expert witness whom Lykins contacted about the crash worthiness theory never had an opportunity to examine the car.

Subsequently, the Cobbs filed suit against the Debtor in the district court. The Debtor was properly served in this action and filed an answer contesting the complaint. During the course of litigation, the Debtor did not respond to discovery requests, nor did he appear for hearings. On March 20, 1997, a default judgment was taken against the Debtor. Damages were awarded in the amount of $2,273,333.33. The district court detailed the damage award as follows: $740,000 in medical bills; $1,000,000 in loss of income and related loss of benefits; $250,000 for pain and suffering for Russell Cobb; $250,000 for loss of consortium for Laura Cobb; $33,333.33 for the legal fees the Debtor had collected from the Cobbs.

In 1998, eight complaints, including a complaint by the Cobbs, alleging violations of the Kansas Rules of Professional Conduct ("KRPC")[3] were heard by a panel of the Kansas Board for Discipline of Attorneys ("panel"). The Debtor did not answer the complaints, nor did he appear at this hearing. After reviewing all of the complaints, the panel recommended disbarment to the Supreme Court of Kansas ("Kansas Supreme Court").

In an appearance before the Kansas Supreme Court on January 23, 1998, in response to a show cause order, the Debtor claimed that he had not responded nor appeared before the panel because he had not received notice. *In re Lewis,* 265 Kan. 766, 962 P.2d 534, 542–43 (1998). He later filed exceptions to the panel report, claiming that he did not receive notice and that he would have refuted the panel's findings. *Id.* He asked the Kansas Supreme Court to grant him a rehearing to allow him to present evidence to refute the panel's finding. *Id.* At an oral argument confined to the narrow issue of whether the Debtor should receive a rehearing or whether the recommended discipline should be imposed, the Kansas Supreme Court found that the Debtor had notice of the hearing, and his motion for rehearing was denied. *Id.* at 543.

---

**3.** Specifically, the Debtor was charged with violating KRPC 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees), 1.15 (safekeeping of property), 1.16 (declining or terminating representation), 7.3 (direct contact with prospective clients), 8.4(a) (violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of anoth-
er), 8.4(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation), 8.4(d) (engage in conduct that is prejudicial to the administration of justice), 8.4(g) (engage in any other conduct that adversely reflects on the lawyer's fitness to practice law), and Supreme Court Rule 207 (duties of bar and judiciary).

In an opinion filed on July 10 1998, the Kansas Supreme Court rejected the panel's recommendation for disbarment and instead indefinitely suspended the Debtor from the practice of law. *Id.* Adopting the panel's findings, the Kansas Supreme Court found that the Debtor had failed to communicate with numerous clients, had failed to cooperate with the disciplinary investigation or to appear at disciplinary hearings, had "pirated" clients from competing attorneys and then had failed to adequately represent the clients. *Id.* at 542–43. Finding no mitigating circumstances, the panel found several aggravating factors which included a finding that the Debtor's actions in the Cobb case "evidence[d] dishonest and selfish motive."[4] *Id.* at 541.

On August 27, 1999, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. On that same day, the Cobbs filed a Complaint for Determination Excepting Debt from Dischargeability ("Complaint"). The Complaint alleged that the debt was nondischargeable under § 523(a)(4) and (a)(6). On June 16, 2000, the Cobbs filed a Motion for Leave to File Amended Complaint ("Motion"). After a hearing on August 4, 2000, the bankruptcy court granted the Motion. On August 7, 2000, the Cobbs filed an Amended Complaint to include a claim that their debt

was nondischargeable pursuant to § 523(a)(2)(a).[5]

On January 10, 2001, the Cobbs moved for Summary Judgment ("summary judgment motion"), arguing that all factual elements of their Amended Complaint had been established either by the district court or in the state disciplinary proceeding and thus, the bankruptcy court was collaterally estopped from making its own factual findings. On May 4, 2001, the bankruptcy court granted the summary judgment motion based on the § 523(a)(2)(A) claim, finding that while it was not collaterally estopped by the district court claim, which was a claim based on negligence, it was precluded by the disciplinary court proceeding. The Debtor filed a notice of appeal on May 15, 2001, one day late. However, this notice was later rendered timely upon Motion by the Debtor to the bankruptcy court, which issued an Order Granting Motion for Extension of Time to File Notice of Appeal.

## IV. Discussion

### A. Grant of Summary Judgment Motion

First, at issue is whether the bankruptcy court erred when it granted summary judgment to the Cobbs on their Amended Complaint. Summary judgment is provided for in the Bankruptcy Code through the Federal Rule of Bankruptcy Procedure

---

4. Other aggravating factors included but were not limited to the following: 1) the Debtor had been informally admonished on three previous occasions for lack of competence, diligence, and improper handling of client's funds; 2) the Debtor's actions in the present case and prior disciplinary proceedings evidence a continuing pattern of neglect, and a continuing pattern of failure to communicate with his clients and the courts; 3) (discussed above); 4) the Debtor did not cooperate with the investigators assigned to research the complaints at issue; 5) the Debtor did not appear at the disciplinary hearings, nor did he file an answer to the complaints; 6) the

panel believed that statements made by the Debtor to the Kansas Supreme Court that he was "looking forward to my day before the hearing panel so that I can express my views..." were false as the Debtor did not appear at the hearing; 7) the complainants were particularly vulnerable; 8) the Debtor had practiced law for twenty-three years and had substantial experience; 9) the Debtor had not refunded money in all of the cases. *Lewis*, 962 P.2d at 541–42.

5. Adversary No. 99–6088

7056,[6] which adopts the Federal Rule of Civil Procedure 56. Pursuant to Rule 56(c), summary judgment is appropriate when after consideration of the record, the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of establishing that he or she is entitled to it, and we review the record in the light most favorable to the opposing party. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir.1995).

In this case, the bankruptcy court granted summary judgment, finding that the Cobbs' Claim was nondischargeable under § 523(a)(2)(A). Specifically, the bankruptcy court found that when the Kansas Supreme Court found a violation of the KRPC 8.4(c),[7] that finding established all the elements of § 523(a)(2)(A) and that the bankruptcy court was collaterally estopped from rehearing the issue.

▇▇▇ Collateral estoppel applies in bankruptcy court actions to determine the dischargeability of a debt. *Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Under collateral estoppel, 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir.1990) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). The purpose of the collateral estoppel doctrine is to protect parties from multiple lawsuits, prevent the possibility of inconsistent decisions, and conserve judicial resources. *Montana v. United States* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

▇▇▇ When a federal court reviews the preclusive effect of a state court judgment under the collateral estoppel doctrine, it is guided by the mandates of the Full Faith and Credit Statute, 28 U.S.C. § 1738 ("Full Faith and Credit Statute"),[8] which codifies the Full Faith and Credit Clause of the Constitution, Art. IV, § 1. *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997). The Full Faith and Credit Statute directs a federal court to look to the preclusion law of the state in which the judgment was rendered. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (holding that in cases exclusively within federal jurisdiction, state law determines the preclusive effect of a prior state court judgment unless an exception to the Full Faith and Credit Statute applies). Thus, while a bankruptcy court ultimately determines whether a debt is nondischargeable under § 523, a state court judgment may preclude the relitigation of settled facts under the collateral estoppel doctrine. *See Klemens v. Wal-*

---

**6.** Rule 7056 provides: "Rule 56 F.R.Civ.P. applies in adversary proceedings." Fed. R.Bankr.P. 7056.

**7.** Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Kan.R.Prof. Conduct 8.4(c). The disciplinary panel explicitly found that the Debtor's conduct in the Cobb case evidenced "dishonest and selfish motive." *Lewis*, 962 P.2d at 541.

**8.** The Full Faith and Credit Statute provides in pertinent part: "The ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State...." 28 U.S.C. § 1738.

lace *(In re Wallace)*, 840 F.2d 762, 765 (10th Cir.1988).

■ However, before a federal court examines the state law rules of preclusion, it must first determine whether the party who opposes collateral estoppel had a full and fair opportunity to litigate the issue in the prior action. *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Whether a party had a full and fair opportunity to litigate may examined by questioning "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *Sil-Flo, Inc.*, 917 F.2d at 1521; *see also Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (holding that a party is denied a full and fair opportunity to litigate a claim or issue in a state proceeding where the proceeding fails to "satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause...").

The Debtor argues that collateral estoppel does not apply because the disciplinary proceedings did not give him the appropriate procedural safeguards, and thus, he did not have a full and fair opportunity to litigate this issue. The bankruptcy court found that the Debtor did have a full and fair opportunity to litigate because formal disciplinary proceedings in Kansas offer the respondent an opportunity to appear and defend on the merits.[9]

■ We do not find that the procedural rules governing the hearing are dispositive of this issue in this case because the Debtor did not have an incentive to fully litigate the issue of his intent with respect to the misrepresentations at issue. The core purpose of the disciplinary proceedings was to review only whether the Debtor should lose his license to practice law. Because the Debtor could have lost his license based on any one of the complaints or on some combination thereof, he had no incentive to fully litigate the issue of his intent with respect to representations made in only one of the eight complaints.

■ However, even if the Debtor had a full and fair opportunity to litigate, summary judgment was inappropriate because all the prongs of the state collateral estoppel test were not met. Because the disciplinary proceeding was a proceeding under Kansas law, the Kansas collateral estoppel doctrine applies. Kansas courts apply collateral estoppel when the following elements are met:

1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, 2) the parties must be the same or in privity, and 3) the issue litigated must have been determined and necessary to support the judgment.

9. Specifically, the bankruptcy court referred to Kansas Supreme Court Rules 211 and 212, which delineate the procedures for initiating and responding to formal disciplinary proceedings. Pursuant to Rule 211 a respondent shall be provided with a notice of hearing that "shall state that the respondent is entitled to be represented by counsel, to cross-examine witnesses, and to present evidence." Kan. Sup.Ct.R. 211(d). The bankruptcy court concluded that the disciplinary proceedings at issue here were entitled to preclusive effect because the Debtor had an opportunity to appear and defend on the merits but did not avail himself of that opportunity. Appellee argued further that the Debtor had a full and fair opportunity to litigate by citing Kansas Supreme Court Rule 216(a), which provides further that a "respondent may, subject to the Rules of Civil Procedure, compel by subpoena the attendance of witnesses and the production of pertinent books, papers, and documents before a hearing panel." Kan.Sup. Ct.R. 216(a).

*Jackson Trak Group, Inc. ex rel. Jackson Jordan, Inc. v. Mid States Port Auth.*, 242 Kan. 683, 751 P.2d 122, 128 (1988).

Here the parties do not contest that elements one and two were met. However, the Debtor argues that the doctrine was inapplicable because the third element of the doctrine was not met. Specifically, the Debtor asserts that the issue of his intent to deceive under § 523(a)(2)(a) was not actually determined and necessary to support the judgment of the Kansas Supreme Court.[10]

Pursuant to § 523(a)(2)(A) a Debtor will not be discharged from any debt "for money, property, or services . . . to the extent obtained by—(A) false pretenses, a false representation, or actual fraud. . . ." 11 U.S.C. § 523(a)(2)(A). Under this subsection, a claim will be nondischargeable if the following elements are proven: 1) the debtor made a false representation; 2) the debtor made the representation with the intent to deceive the creditor; 3) the creditor relied on that representation; 4) the creditor's reliance as reasonable; 5) the debtor's representation caused the creditor to sustain a loss.

*Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir.1996). "False pretenses" or "representations" are representations knowingly and fraudulently made that give rise to the debt. *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir.1986), *abrogated in part on other grounds by Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The creditor bears the burden of proving that all elements are present. *Grogan*, 498 U.S. at 287, 111 S.Ct. 654.

The bankruptcy court concluded that the Kansas Supreme Court's findings indicate that the Defendant intentionally made false representations and that the Cobbs justifiably relied upon them. Specifically, the bankruptcy court found that the Kansas Supreme Court had concluded that the Debtor made the following representations to the Cobbs: 1) that Lykins was incompetent; 2) that the Cobbs should get rid of their car; 3) that the Debtor would take care of any ERISA liens on a judgment; and 4) that the Debtor would do further work on the personal injury case to recover one million dollars for the Cobbs.[11] Af-

---

10. Alternatively, the Debtor argues that while the disciplinary panel found him guilty of violating several disciplinary rules, the disciplinary panel never connected its findings with respect to the Cobb Amended Complaint with the damages awarded by the district court. The Debtor focuses on the word "obtained" in § 523(a)(2)(A) and argues that no tribunal has ever established that he obtained the total sum of $2,273,333.33 by fraud. Because we dispose of this issue on other grounds, we will not address that argument here.

11. As adopted by the Kansas Supreme Court, the panel made the following finding of fact relevant to this appeal:

64. At the Shoney's restaurant, Laura Cobb was approached by the Respondent [Debtor] and the Respondent inquired as to what was happening. Mrs. Cobb told Mr. Lewis that she had hired Dan Lykins to handle the personal injury matter resulting from the automobile accident. Respondent told Laura Cobb that she should fire Mr. Lykins since he was an ambulance chaser and that she should hire the Respondent and that the Respondent would recover $1,000.000.00 for the Cobbs. He dictated letters terminating Mr. Lykins and then had Mrs. Cobb sign a contingency fee contract with him.

. . . .

66. Upon being hired by the Cobbs, the Respondent did nothing on the case other [than] finalize the paperwork with the insurance company to settle for the policy limits of $100,000.00. Respondent then took one-third (1/3) of the settlement amount and did nothing further.

. . . .

ter examining the totality of the circumstances surrounding these representations, the bankruptcy court reasoned as follows: 1) one's knowledge that a statement is false is circumstantial evidence of an intent to deceive; 2) the Debtor knew the statements were false because he did not know they were true; 3) the statements were made to "pirate" the case from Lykins; 4) the court in the disciplinary action found that Defendant's conduct evidenced dishonest and selfish motive and that his motives were for purely personal gain. The bankruptcy court concluded that "[t]he findings in the disciplinary action show that Defendant made false representations," and that these findings were enough to establish the element of intent to deceive under § 523(a)(2)(A).

 We do not agree. In Kansas, an issue is not actually determined unless that issue was necessary to support the final judgment. As the Kansas Supreme Court has stated when interpreting its collateral estoppel doctrine:

> "The true rule, now well established, is that, where a second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue upon the determination of which the finding was made or the judgment rendered...."

*Stroup v. Pepper*, 69 Kan. 241, 76 P. 825, 826 (1904); *see also Phelps v. Hamilton*, 122 F.3d 1309, 1320 (10th Cir.1997) (interpreting Kansas collateral estoppel doctrine). Findings of mediate facts, or facts not necessary to the ultimate facts involved, will not collaterally estop subsequent courts from making findings on such issues. *See Frey v. Inter–State Sav. & Loan Ass'n*, 226 Kan. 419, 601 P.2d 671, 674 (1979). We find that there is nothing in the record to indicate that the Kansas Supreme Court made any findings that the stated representations made to the Cobbs were made with an intent to deceive, nor was such a finding tied to its judgment that the Debtor had violated the KRPC rules. The only disciplinary rule infraction that the Kansas Supreme Court specifically tied to the Cobb case was the Debtor's violation of Rule 8.4(c). Although the panel found that the Debtor had engaged in conduct involving dishonesty and therefore violated Rule 8.4(c) in the Cobb case, that finding was not linked to any one of the representations isolated by the bankruptcy court. Additionally, the finding that the Debtor had engaged in "dishonest conduct" does not necessarily incorporate the element of "specific intent." Finally, we note that the violation of Rule 8.4(c) was not necessary or essential to the final judgment, which included numerous charges and numerous findings based on eight complaints. For these reasons, the issue of the Debtor's intent was not actually determined, and the bankruptcy court was not precluded from hearing whether the Cobbs' Claim was nondischargeable under § 523(a)(2)(A). Because the factual

72. Upon his hire, Respondent told the Cobbs to get rid of the car and said that Mr. Lykins was incompetent and there was no reason to keep the automobile. The Cobbs let the car go for storage fees. Mr. Lykins testified [in the state district court case] that the car should have been retained for the expert to check the crash worthiness of the vehicle.

73. The Cobbs were never successful in being able to contact the Respondent although they made numerous attempts to find out what was going on with their case. The Respondent told Laura Cobb that the $100,000.00 was a drop in the bucket and that he would do further work on the personal injury case but the Respondent never did anything further.
*Lewis*, 962 P.2d at 540–41.

issue of intent was in dispute, summary judgment was inappropriate.

## B. Allowance of Amendment

██ Second, at issue in this appeal is whether the bankruptcy court erred when it granted the Cobbs' Motion to amend their complaint. Because we have found that summary judgment was not appropriate in this case and the Order is therefore not final, we must first determine whether we have jurisdiction to consider this issue. *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (a federal appellate court must determine whether it has jurisdiction over an appeal). While final decisions of a bankruptcy court may be appealed to this Court as of right, 28 U.S.C. § 158(a)(1), interlocutory appeals may only be brought "with leave" of the court. *See* 28 U.S.C. § 158(a)(3). A party obtains permission from the court to file an interlocutory appeal by "filing a notice of appeal . . . accompanied by a motion for leave to appeal prepared in accordance with Rule 8003. . . ." Fed.R.Bankr.P. 8001(b). In this case, the Debtor did not secure leave to appeal in accordance with these rules; however, the Debtor is not foreclosed from seeking interlocutory review. Under Bankruptcy Rule 8003(c), if a party has not made a timely notice of appeal, "the district court or bankruptcy appellate panel may grant leave to appeal . . . . [or] may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal." Fed.R.Bankr.P. 8003(c). We will consider this appeal as motion for leave to appeal.

We must next decide whether the appellant has presented us with evidence that an interlocutory appeal is warranted. An interlocutory appeal is appropriate when the appealed order involves "a controlling question of law as to which there is substantial ground for difference of opinion, and the immediate resolution of the order may materially advance the ultimate termination of the litigation." *McCarn v. WyHy Fed. Credit Union (In re McCarn)*, 218 B.R. 154, 157 (10th Cir. BAP 1998). The question of whether the bankruptcy court erred when it granted the Cobbs leave to amend their complaint is a controlling question of law that meets this standard, particularly given the circumstances of this case. We therefore grant leave to file an interlocutory appeal.

Fed.R.Bank.P. 7015 refers to Federal Rule of Civil Procedure 15. Rule 15 provides that subsequent to the twenty-day period within which a party may as a matter of course amend a pleading, a party may amend a pleading "only by leave of court . . . and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15.

The Debtor acknowledges the liberal policy behind Rule 15 but argues that leave to amend should not be granted when there is undue delay in making a motion to amend and such an amendment will be prejudicial to the defendant. The Debtor contends there was undue delay in this motion because the motion was not based on new evidence but on evidence always available to the Cobbs. He was prejudiced, Debtor argues, because while the judge denied summary judgment on the original complaint, which included only the §§ 523(a)(4) and (a)(6) charges, the judge granted summary judgment on the § 523(a)(2)(A) count.

The Debtor's argument fails. The objective behind Rule 15 is to assist the parties to make a proper presentation of a case. *See* 10 Collier on Bankruptcy ¶ 7015.03 (Lawrence P. King ed., 15th ed. rev.2000). The rule makes it "possible for the court to have the pleadings amended prior to the trial so that the real, disputed

issues are clearly formulated." *Id.* Amendments should be allowed unless the objecting party can show that it would be "actually prejudiced" by the amendment. *Id.* The Tenth Circuit has found that there is no prejudice to an objecting party when the amended complaint refers to the same facts and transactions that formed the basis for the original complaint. *LeaseAmerica Corporation v. Eckel,* 710 F.2d 1470, 1473 (10th Cir.1983). That is the situation here. The Cobbs amended their complaint to include only an additional legal basis under which their Claim was allegedly nondischargeable. We conclude that the bankruptcy court did not abuse its discretion when it permitted the Cobbs to amend on this basis.

### V. Conclusion

For the reasons set forth above, the court's order granting summary judgment in favor of the Cobbs on the basis that the bankruptcy court was collaterally estopped from determining whether their Claim was nondischargeable under § 523(a)(2)(A) is REVERSED and REMANDED for proceedings consistent with this judgment. We AFFIRM the bankruptcy's order granting the Cobbs leave to amend their complaint.