**In re Charles Marshall JOHNSON and Cora Jean Johnson, d/b/a Johnson Farms, Debtors.**

**Bankruptcy No. 81–21061.**

United States Bankruptcy Court,
D. Kansas.

April 9, 1982.

Charles Marshall Johnson, Cora Jean Johnson, debtors, pro se.

Thomas M. Mullinix, of Evans, Mullinix & Jarcyzk, Kansas City, Kan., for debtors.

David L. Skidgel, of McAnany, Van Cleave & Phillips, Kansas City, Kan., for creditor.

Chris Henry, Kansas City, Kan., trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on January 8, 1982, upon the debtors' Application to Avoid a Lien of Citizens State Bank of Pomona, Kansas (hereinafter called CSB).

The debtors sought to avoid CSB's lien on certain tools of trade, to-wit: a 1953 Ford tractor; a six foot rotary mower; a 1976 International skid-loader; ten hog sheds; one post hole digger; one 3″ paint disc; one grade blade; two sheer plows; 22 farrowing crates; a 1976 Ford Pickup; nine 60 PU hog feeders; five metal fence feeders; three nursery feeders; one 4×8 two wheel trailer; 1 four wheel grain wagon; one 19FR tandum axle trailer; one 300 gallon gas tank with stand; one 1967 Ford Pickup; and ten Pride of the Farm waterers.

CSB contends their lien cannot be avoided for three reasons: (1) the debtors had no exemptable interest in the collateral because it was partnership property; (2) the collateral was not "tools of trade" on the date of the petition, and thus not exemptable; and (3) CSB's lien could not be constitutionally avoided because it attached before the Code's enactment date. This Court took those issues under advisement, as well as the issue of the collateral's fair market value.

## FINDINGS OF FACT

This Court has reviewed the stipulations, evidence and pleadings; and has taken judicial notice of four related cases. One case, styled "The Federal Land Bank of Wichita v. Charles Marshall Johnson and Cora Jean Johnson, Adversary No. 82–0022" is a relief from stay action. Another case, styled "Charles Marshall Johnson and Cora Jean Johnson, d/b/a Johnson Farms, Case No. 81–40332" is a prior Chapter 13 filed in the bankruptcy court in Topeka, Kansas, and dismissed by the debtors on September 2, 1981. The other two cases involve Helen Nadine Johnson, Charles Johnson's mother. Helen filed a Chapter 7 in this court, Case No. 81–21063; and the Federal Land Bank of Wichita also filed a Complaint for Relief from Stay against her, Adversary No. 82–0023. Based on this information, the Court finds as follows:

1. That this Court has jurisdiction over the parties and subject matter; and venue is proper.

2. That the debtors filed a voluntary Chapter 7 proceeding on November 6, 1981, and have not yet been discharged.

3. That Charles and his father, Paul, ran a feeder pig farm until Paul's death in 1976. Thereafter, the debtors ran the farm. Charles was the primary obligor on most notes to CSB after 1976. He was the obligor on the four renewal and consolidation notes at issue herein. Charles testified that he believed and represented to CSB personnel that he, Cora and Helen were in partnership. There was no written partnership agreement. Helen did not participate in the farm at all, and she received no share of any profits. Helen and Charles filed a partnership tax return for 1979–80, but stated their sole motivation was to decrease their tax liabilities.

4. That the debtors owe CSB $65,555.30, which is secured by nonpurchase-money, nonpossessory security interests in most of the farm personalty. The balance due is comprised of two renewal notes and two renewal-consolidation notes:

(a) $ 6,935.30    renewal of balance due on 5/29/79 note for $7,450.00.

(b) $ 7,700.00    renewal of 10/8/80 note for $7,700.00.

(c) $12,500.00    renewal and consolidation of five notes dating from 5/7/79 to 8/9/79.

(d) $38,420.00    renewal and consolidation of five notes dating from 1977 to 8/1/78.

5. That prior to 1979, the debtors had a "feeder pig" farm where they raised infant pigs to a 40 or 50 pound weight; and then sold the pigs to a "fat hog" farm to be raised to a market weight of 220 pounds. In 1979, the debtors switched to fat hog farming. Fat hog farming required much more grain than feeder pig farming. The debtors did not grow their own grain. Rising grain prices, coupled with falling market prices for fat hogs, prompted the debtors' insolvency. On September 1, 1981, the debtors, unable to buy feed on credit, voluntarily surrendered their hogs to CSB, thereby reducing their indebtedness to CSB. Thereafter, Charles periodically bought groups of feeder pigs, for quick resale. He did not keep these pigs for any length of time and did not buy them to fatten them up for resale. Charles could not recall whether they had an inventory of pigs on November 6, 1981, the date of the petition. However, he testified that if he did not list any pigs on the bankruptcy schedules, then there was no inventory of pigs on that date. He did *not* list any pigs on the schedules.

6. That the debtors lack the cash or credit necessary to buy grain to re-engage in pig farming. Charles testified that a banker indicated that several investors were interested in leasing the farm and hiring Charles to manage a proposed co-op. However, Charles did not know the identity of these investors. Charles also testified that a neighbor had mentioned a custom feeding arrangement.

7. That the Johnson farm has three outstanding mortgages against it, all delinquent on the date of the petition. This Court heretofore granted relief from stay to The Federal Land Bank of Wichita, to foreclose in state court.

8. That CSB and the debtors submitted appraisals of the collateral in question. CSB valued the items at $17,385.00; and the debtors valued the items at $9,900.00.

## CONCLUSIONS OF LAW

Lien avoidance is governed by 11 U.S.C. § 522(f), which states in pertinent part:

"§ 522. Exemptions.

*(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—*

    \*     \*     \*     \*     \*     \*

*(2) a nonpossessory, nonpurchase-money security interest in any—*

    \*     \*     \*     \*     \*     \*

*(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;"*

## I.

■ CSB contends that its lien is on partnership property; and thus, that its lien does not impair an exemption to which the debtors are entitled. It is generally recognized that individual partners cannot exempt partnership property in a bankruptcy proceeding. *3 Collier on Bankruptcy*, 15th ed., discusses the issue at ¶ 522.05[3]:

*"Under the Act, where a partnership existed, the problem of whether the members of a bankrupt partnership could claim exemptions from the partnership assets depended upon state law. In states where the Uniform Partnership Act is in effect a partner could not claim exemptions in firm property. In the absence of such law, the same result was often reached because the firm is an entity and partners were held to have no interest in partnership assets until all creditors had been paid.  \* \* \**

*· The Code . . . adopts the rule that individual partners may not exempt partnership assets."*

■ Whether CSB's lien is on nonexemptable partnership property hinges on the existence of a partnership. Kansas adopted the Uniform Partnership Act, K.S.A. 56–301 et seq. (1972), which defines partnership as *"an association of two or more persons to carry on as co-owners a business for profit."* There are no filing or creation requirements. Rather, the parties' intentions, the terms of their agreement and the manner in which they carry out their business determines their status. *Grimm v. Pallesen*, 215 Kan. 660, 527 P.2d 978 (1974) citing *Potts v. Lux*, 161 Kan. 217, 166 P.2d 694 (1946).

■ Kansas courts use a number of tests in determining the existence of a partnership. No one factor or test is conclusive. Factors include: the parties' intentions; sharing of profits, losses and expenses; joint control of management; joint owner-

ship of assets; and active participation in management. *Potts v. Lux, supra*, at 698.

■ Here, Charles testified that he believed they were a partnership. However, there was no evidence of partnership agreement, written or oral, except for income tax filing. Moreover, the business was not conducted in a partnership manner. Helen neither participated in farming, nor shared in profits, losses, expenses or management duties. The fact that Helen and Charles filed one partnership tax return is inconclusive, particularly since their admitted motivation was to decrease their tax liabilities. On balance, this Court must find that the debtors operated the farm as proprietors, and not in partnership with Helen.

■ CSB argued alternatively that there was a partnership by estoppel. The equitable concept of partnership by estoppel is simply not applicable to these facts. The concept is applied to impose liability on debtors who misrepresent that they are partners, to the detriment of a relying creditor. See 59 Am.Jur.2d *Partnership* § 75; *Phillip Van Heusen, Inc. v. Thomas A. Korn & Thomas L. Korn*, 204 Kan. 172, 460 P.2d 549 (1969); *Muse v. Baker*, 216 Kan. 788, 533 P.2d 1234 (1975). Here, the debtors' liability to CSB is not disputed. This Court concludes then, that there was no partnership and that CSB's lien is on individual property of the debtors.

## II.

■ CSB's second contention is that its collateral was not "tools of trade" on the date of the petition; and thus, that its lien does not impair an exemption to which the debtors were entitled. Exemption rights in bankruptcy are determined as of the date the petition is filed. 11 U.S.C. § 522(b)(2)(A), *Mansell v. Carroll*, 379 F.2d 682, 685 (10th Cir. 1967).

■ The general rule is that the debtor must be engaged in the trade on the date of the petition, in order to claim the tools of that trade as exempt. However, when the debtor had only temporarily ceased the vo-

cation at the time of the petition, the tools of trade may still be exemptable. See *In re Fly*, 110 F. 141 (D.C.Cal.1901); *Matter of Hahn*, 5 B.R. 242 (Bkrtcy., S.D.Iowa 1980).

 The debtors admit that they were not engaged in pig farming on the date of the petition; but argue that they had only temporarily ceased farming. The debtors also admit that they have no cash or credit to buy grain, and thus, cannot re-engage in pig farming, without assistance. Charles mentioned two prospects for re-engaging in pig farming. Charles testified that a banker mentioned that investors might be interested in leasing the farm and hiring Charles to run a co-op for them. Charles has not talked to these investors and did not know their identity. Charles also testified that his neighbor suggested a custom feeding arrangement. These so-called prospects are nebulous and indefinite. The debtors have failed to demonstrate any reasonable prospects for re-engaging in pig farming. Furthermore, the farm has three outstanding, delinquent mortgages against it; and foreclosure is imminent. This Court must conclude that CSB's collateral was not exemptable tools of trade on the date of the petition. Thus, CSB's lien cannot be avoided since it does not impair an exemption to which the debtors were entitled. Accordingly, the debtors' application to avoid CSB's lien is denied.

### III.

In view of this Court's conclusion that CSB's lien cannot be avoided by debtor, the Court finds that it need not discuss the issue of the constitutionality of avoiding CSB's lien.

### IV.

CSB and the debtors submitted appraisals of CSB's collateral at issue; and asked this Court to determine the value of the collateral. CSB's appraisal was $17,385.00 and the debtors' appraisal was $9,900.00. This Court finds from all the evidence that the value of the collateral at issue is $12,500.00.

THE FOREGOING CONSTITUTES MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.