**In re Roger A. GRIFFIN and Victoria L. Griffin, Debtors.**

**Bankruptcy No. 90–11558–7.**

United States Bankruptcy Court, D. Kansas.

June 1, 1992.

cause it was not tested by cross-examination.

J. Michael Morris of Klenda, Mitchell, Austerman, & Zuercher, Wichita, Kan., for the trustee.

Robert E. Nugent of Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., for Lyons State Bank.

## MEMORANDUM OF DECISION

JOHN T. FLANNAGAN, Bankruptcy Judge.

Robert E. Nugent of Morris, Laing, Evans, Brock & Kennedy, Chartered, Wichita, Kansas, appears as counsel for the movant Lyons State Bank ("the Bank"). J. Michael Morris of Klenda, Mitchell, Austerman & Zuercher, Wichita, Kansas, appears for the trustee who objects to the motion.

The Court finds that this proceeding is core under 28 U.S.C. 157 and that the Court has jurisdiction under 28 U.S.C. 1334 and the general reference order of the District Court effective July 10, 1984.

Lyons State Bank filed a Motion for Relief From Stay to apply the proceeds from the sale of Victoria Griffin's non-exempt farm equipment to its alleged secured claim. The trustee filed a Limited Objection to the Bank's motion as to Victoria Griffin's interest in this non-exempt equipment which is property of the estate. The Court holds that the Bank's security interest in Victoria Griffin's ownership interest in the non-exempt equipment is unperfected and that the trustee is entitled to prevail.

On February 9, 1984, Roger Griffin executed a promissory note, security agreement and financing statement to Lyons State Bank, granting a security interest in various listed items of farm equipment. The Bank filed the financing statement with the Kansas Secretary of State on May 21, 1987. On March 3, 1988, Roger executed a renewal note in the amount of $168,883.62, along with a security agreement granting a security interest in "all livestock, equipment, all special equipment, and all machinery." Roger's wife, Victoria, did not sign any of these documents and was not listed as a "debtor" on any of the financing documents. On May 21, 1990, Roger and Victoria filed a joint Chapter 7 petition and schedules in bankruptcy claiming as exempt co-owned farm equipment. Each debtor individually designated $7,500 worth of farm equipment as his or her respective exempt tools of the trade under K.S.A. 60–2304.

The Bank claimed a perfected security interest in all of the equipment claimed as exempt tools of the trade. It filed objections to the debtors' exemptions and to the debtors' motion to avoid the Bank's alleged lien on the exempt property. However, the Bank withdrew its objection to the exemptions and to lien avoidance under a settlement with the debtors. An order was entered allowing the tool-of-the-trade exemption for both Roger and Victoria and avoiding the Bank's alleged lien on this equipment.

This left in dispute the Bank's lien against the non-exempt equipment which remained in the bankruptcy estate. The trustee took no exception to the Bank's motion for stay relief as it related to Roger's interest in non-exempt equipment, but he did challenge the existence and perfection of the Bank's security interest in Victoria's interest in non-exempt equipment.

The parties agreed to sell the equipment free and clear of liens with the Bank's alleged lien attaching to the sale proceeds until the Court's decision. With Court approval, the trustee sold the equipment and distributed $6,159.28 to the Bank. This amount was the one-half of the net proceeds of the sale representing Roger's ownership in non-exempt equipment. The trustee is holding the remaining $6,159.28

of sale proceeds representing Victoria's alleged ownership of non-exempt equipment, subject to the Bank's lien should the Court find it valid.

The Bank and the trustee filed briefs and a joint final pretrial order. A trial was held and the Court allowed additional time for briefing. Both parties filed post-trial briefs.

The Bank argues that the trustee failed to establish Victoria's ownership interest in the non-exempt equipment.

Victoria Griffin was called to testify by the Bank and was cross-examined by the trustee. Her testimony was that she and Roger were co-owners of all the farm property listed on their bankruptcy schedules, including the equipment upon which the Bank claims a security interest; that she worked on the farm since they began in 1971, doing such things as feeding hogs, driving the combine and tractor, and baling hay; and that for a number of years prior to the bankruptcy she had off-farm income from employment as an office manager. The income from this job and from the farming operation was placed in a joint bank account and used to pay farming and household expenses. The Griffins acquired all of the equipment during their marriage, but after they began farming in 1971. The Bank presented no other evidence to rebut Victoria's testimony that she is a co-owner of the equipment subject to the dispute.

■ The Court must decide whether Victoria has an ownership interest in untitled personal property, the equipment. In Kansas, married persons can separately own personal property whether it was owned at the time of marriage or acquired separately during marriage. *Ackers v. First National Bank of Topeka*, 192 Kan. 319, 387 P.2d 840 (1963). Common experience and K.S.A. 23–201(b) suggest that a married couple can acquire a co-ownership title in personal property as joint tenants or tenants in common. K.S.A. 23–201(b) states:

(b) All property owned by married persons, whether described in subsection (a) or *acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common* shall become marital property at the time of the commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. . . .

Since co-ownership of personal property acquired during marriage is allowed, the Court must be able to determine its existence from evidence of the intent and conduct of the party claiming title, unless some rule of law prevents it. No such rule has been cited to the Court.

■ This approach is consistent with the usual legal procedures for determining title to property. K.S.A. 60–1002 provides that "An action may be brought by any person claiming title or interest in personal or real property. . . ." Under K.S.A. 60–1005, the replevin procedure, either co-owner can bring "an action to recover possession of specific personal property" if the equipment is in the possession of some unauthorized third party. In such an action, plaintiff must allege that she is the owner of the equipment or "lawfully entitled to possession thereof." The burden of going forward with the evidence and the burden of persuasion is upon the plaintiff/co-owner. Here, Victoria was in possession of the equipment at the filing of the petition under a claim of interest which the Bank denies she has a right to make. The only evidence before the Court supports an ultimate finding of fact that Victoria has an ownership interest in the equipment. Absent some rule of law or presumption that Victoria must overcome to carry the burden of persuasion, the Court cannot say that she has not met her burden if, indeed, such a burden is hers. The Bank, on the other hand, has presented nothing to rebut the *prima facie* showing of ownership established by Victoria's testimony and the undisputed circumstantial evidence. From the evidence presented, the Court concludes that Victoria was in possession of and held title to a co-ownership interest in the non-exempt farm equipment when the Chapter 7 petition was filed.

■ As to the quantum of her ownership, the trustee suggests that K.S.A. 58–501 generates a presumption favoring tenancy in common and that, in turn, *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382 (1978), mandates that a rebuttable presumption of equal ownership of property arises when there is a tenancy in common.

K.S.A. 58–501 states:

(a) Real or personal property granted or devised to two or more persons including a grant or devise to a husband and wife shall create in them a tenancy in common with respect to such property unless the language used in such grant or devise makes it clear that a joint tenancy was intended to be created....

(b) The provisions of this act shall apply to all estates in joint tenancy in either real or personal property heretofore or hereafter created and nothing herein contained shall prevent execution, levy and sale of the interest of a judgment debtor in such estates and such sale shall constitute a severance.

In *Walnut Valley*, a garnishment naming the wife as an interest holder in a joint tenancy bank account caused severance of the parties' interest into a tenancy in common. A presumption of equal ownership arose with the tenancy in common. The court held the burden of the party challenging the presumption of equal ownership was to establish that one party holds an interest other than an undivided one-half interest in property held as tenants in common. Here, there is no severance of a joint account, but rather an evidentiary showing of co-ownership which the statute dictates should be viewed as a tenancy in common. The Court holds that the principle of *Walnut Valley* requiring a party challenging ownership to overcome the presumption of equal ownership is applicable in this case. The Bank has not produced any evidence on this issue contrary to that of Victoria Griffin's testimony of equal ownership and has failed to overcome the presumption.

Next, the Bank relies on *In re Oetinger*, 49 B.R. 41 (Bankr.D.Kan.1985), to advance the notion that the Griffins were operating a partnership. In *Oetinger*, the court found that a husband and wife were operating as a farm partnership and that the husband had the authority to bind his wife contractually with a secured lender. Applying that same logic, the Bank argues that Roger, a partner acting as agent of the partnership, had authority to grant a security interest in all of the debtors' jointly acquired partnership property.

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." K.S.A. 56–306(a). K.S.A. 56–307 sets out rules for determining the existence of a partnership.

In determining whether a partnership exists, these rules shall apply:

(a) ....

(b) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

(c) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived....

■ The existence of a partnership is a matter of contract, and the most important element involved is intent. *Grimm v. Pallesen*, 215 Kan. 660, 663, 527 P.2d 978 (1974). The burden of proof is on the party asserting that the relation exists. *Curtis v. Hanna*, 143 Kan. 186, 53 P.2d 795 (1936). When the focus of the inquiry is whether a partnership exists between a husband and wife, their relationship is a further complication as shown by the following quotation taken from the trustee's brief:

59A Am.Jur.2d *Partnership* §§ 240–242: The marital relation between husband and wife does not by itself give rise to a partnership affecting their mutual rights and obligations or their relationship to third persons. *Nor does the mere fact that a wife participates in the conduct of a business with her husband necessarily establish a partnership between*

*them, unless there exist some other indicia of partnership and the intent to form a partnership is clearly proved.* It follows that the determination whether a partnership exists between spouses will necessarily depend on the particular facts of each case; no single or conclusive test will suffice in every situation. (emphasis added) (§ 240)

Establishing the existence of a spousal partnership in business requires a determination made by reference to the essential elements of partnership, without distinction as to whether the alleged partners are persons married to one another. The associational and contractual element of a partnership between spouses, even though not formalized, may be implied from the facts and circumstances.... The co-ownership element may similarly be implied.... However, focusing on the profit-sharing element may not be useful since some degree of profit sharing is common in marriages whether or not a business partnership exists.... (§ 241)

... Factors of mutual representation, whereby a wife is recognized in the community as possessing the authority to act for and on behalf of her husband and his business and to help manage and operate the husband's business, are as common to the marital relationship as they are to a partnership. Their existence, alone, does not imply the existence of a partnership unless the intent to form a partnership is proven by other evidence, *such as proof of a right to a division of profits, instead of a deposit of all profits into a joint account with joint use of the income.* The fact that a wife signs notes, security agreements, or financing statements with her husband is not, without further explanation of the circumstances, determinative that a partnership exists. (emphasis added) (§ 242)

■ The only witness called by the bank besides Victoria Griffin was Dale Snyder, an officer of Lyons State Bank. Mr. Snyder's testimony was that he thought of the debtors as one entity and he knew that the husband and wife worked at the operation together; that he had no knowledge of the debtors holding separate property; and that he felt Roger represented Victoria in financial dealings with the Bank. He based these conclusions on his knowledge that the debtors were married and that they operated the farm together.

The evidence presented in this case does not establish that either the debtors or the Bank believed that Roger and Victoria were operating their farm as a formal partnership. While Victoria no doubt shared in the farm profits, there is no evidence of any agreement about division of profits. Although Victoria Griffin testified that she and her husband worked as a team on the farm, there is no evidence that the debtors intended to create a partnership. On this state of the record, the Court finds that the Bank has failed to carry its burden of proof that a partnership existed.

■ The last question is whether the financing statement is effective to perfect the Bank's security interest.

Victoria's name does not appear on the financing statement as "debtor." The financing statement (Exhibit A–5) lists the debtor only as:

Griffin, Roger
Route Two
Lyons, Kansas 67554

The exhibits introduced at trial show that Roger Griffin signed the notes, security agreements and financing statements as "Roger Griffin" only, with no indication that he was signing on behalf of or as agent for his wife.

Nevertheless, the trustee concedes the authority of Roger to sign documents for Victoria, probably because of her unrebutted testimony that she authorized Roger to sign financing documents on her behalf. The trustee further concedes that the security agreement Roger signed created a security interest in the equipment Victoria owned. However, in the trustee's view, this is immaterial since he believes the security interest is not perfected. The omission of Victoria's name from the financing statement, he argues, is so "seriously misleading" as to impair notice to any creditor searching the filing records, thereby ren-

dering the statement ineffective as to Victoria.

The Court accepts as true the trustee's concessions and turns to the question of whether or not the security interest is perfected, expressing no opinion on what the Court's ultimate findings might have been on Victoria's testimony about her grant of authority to sign documents.

The requirements of a financing statement are set forth in K.S.A. 84–9–402(1):

A financing statement may be in a form prescribed by the Secretary of State *and shall give the names of the debtor* and the secured party, shall be signed by the debtor, shall give an address of the secured party from which information concerning the security interest may be obtained, shall give a mailing address of the debtor and shall contain a statement indicating the types, or describing the items, of collateral.... (emphasis added)

The U.C.C. prescribes the method of indexing financing statements. K.S.A. 84–9–403(4) directs the indexing by the filing officer "according to the names of the debtors ... given in the statement." "The purpose behind the filing provisions is to provide notice to subsequent creditors in a manner which will give such creditors confidence that they are aware of·any prior security interests in the collateral that may be superior to their own interest." *Pearson v. Salina Coffee House*, 831 F.2d 1531, 1536 (10th Cir.1987).

 Victoria knew that Roger was giving the Bank a security interest in the co-owned equipment and she agreed that he might do so. Although she was not a party to the note secured by the equipment or to the security agreement, she could, under the U.C.C. "authorize" the use of her property as security for her husband's debt. If so authorized, the obligor under the note has "rights in the collateral" sufficient for the security interest to attach under § 9–203(1)(c). *K.N.C. Wholesale, Inc. v. AWMCO, Inc.*, 56 Cal.App.3d 315, 128 Cal.Rptr. 345 (1976). When this is the case, however, the name of the *owner* must

appear on the financing statement. The U.C.C. at § 9–105 provides:

Where the debtor and the owner of the collateral are not the same person the term "debtor" means the owner of the collateral in any provision dealing with the collateral....

Since the purpose of a financing statement is to give notice of existing security interests,

In cases where the "debtor" is not the owner but has only obtained his rights in the collateral due to the owner's permission, a financing statement in the name of the "debtor" alone fails to give subsequent creditors of the owner any notice that the collateral is subject to a prior security interest. To avoid such potential fraud or misrepresentation, the term "debtor" as used in section 9402 must be taken as referring to both the actual debtor and the owner of the collateral, i.e., both names are required on the financing statement to perfect the security interest.

*K.N.C. Wholesale v. AWMCO, Inc., Id.*, 128 Cal.Rptr. at 348–349. See also, *Pontchartrain State Bank v. Poulson*, 684 F.2d 704, 708 (10th Cir.1982) (Logan, J. concurring; quoting *K.N.C. Wholesale* with approval). For a case applying this rule in the husband and wife context, see *Gen. Motors Accept. Corp. v. Wash. Tr. Co.*, 386 A.2d 1096 (R.I.1978) (financing statement naming husband only unperfected as to automobile owned by wife. "The financing statement filed by plaintiff does not refer to Rosemary, the owner of the collateral, and is therefore defective." *Id.* at 1099).

The U.C.C. addresses when a financing statement sufficiently shows the name of the debtor in the following terms:

(7) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners....

K.S.A. 84-9-402(7).

 The Bank argues that the failure to include Victoria Griffin's name as "debtor" on the financing statement is not "seri-

ously misleading" within the meaning of K.S.A. 84–9–402(7). K.S.A. 84–9–402(8) is the source of this argument. It states:

(8) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

Under § 402(7), a financing statement is sufficient if it shows the "individual" name of the debtor. Victoria is an individual and she is not listed as a debtor on the financing statement. Any search of the filing record under the individual name "Victoria Griffin" is unlikely to disclose the Bank's financing statement of May 21, 1987. Such a search under the permutation "Griffin, Victoria" might turn up the financing statement designated "Griffin, Roger," but it would likely be lost among a large number of other statements of debtors whose last name is Griffin. The Court can only conclude that the omission of Victoria Griffin's name from the financing statement is a seriously misleading error that cannot be sanctioned. The failure of the Bank to list Victoria Griffin as a "debtor" on the financing statement renders it unperfected as to her one-half interest in the equipment.

The consequences to the Bank of being unperfected are spelled out by K.S.A. 84–9–301(1) which provides that "an unperfected security interest is *subordinate* to the rights of … a lien creditor…." and by K.S.A. 84–9–301(3) which defines a "lien creditor" to include a trustee in bankruptcy from the date of the filing of the petition.[1]

The trustee's Limited Objection is sustained and the Lyons State Bank's Motion for Relief From Stay is Denied.

The foregoing discussion shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

---

1. Bankruptcy Code § 544 would require the same result by giving the trustee the rights and powers of a judicial lien holder at the time of the commencement of the bankruptcy case.