In re Donald R. LAMPE and Sheila
L. Lampe, Debtors.

Donald R. Lampe and Sheila
L. Lampe, Appellants–
Cross–Appellees,

v.

Iola Bank and Trust, Appellee–
Cross–Appellant,

Darcy Williamson, Chapter
7 Trustee, Appellee.

BAP Nos. KS–01–007, KS–01–015.
Bankruptcy No. 00–41306.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

May 22, 2002.

William E. Metcalf, Metcalf & Justus, Topeka, KS, for Appellants–Cross–Appellees.

Amy J. Ginsberg, Garrison, Czeschin & Ginsberg, LLC, Merriam, KS, for Appellee–Cross–Appellant.

Darcy Williamson, Topeka, KS, Trustee, pro se.

Before McFEELEY, Chief Judge, CORNISH, and CORDOVA,[1] Bankruptcy Judges.

## OPINION

CORDOVA, Bankruptcy Judge.

This case requires us to construe the Kansas exemption statute applicable to "tools of the trade," Kan. Stat. Ann. § 60–2304(e). Donald R. and Sheila L. Lampe ("Debtors") appeal and Iola Bank & Trust ("Bank") cross appeals from the order of the United States Bankruptcy Court for the District of Kansas in which the court concluded that one of the Debtors was entitled to claim a tools of the trade exemption under Kan. Stat. Ann. § 60–2304(e). In their appeal, the Debtors contend that the bankruptcy court erred in determining that only Donald Lampe was eligible to claim as exempt certain farm equipment. The Bank argues in its cross appeal that the bankruptcy court erred in concluding that the Debtors were farmers entitled to any tools of the trade exemption. For the following reasons, we affirm the bankruptcy court insofar as it concluded that the Debtors were farmers and reverse the court's conclusion that Sheila Lampe was not entitled to a tools of the trade exemption under Kan. Stat. Ann. § 60–2304(e).

## I. Background

Donald Lampe began working as a farmer while in high school in 1971. After he married Sheila Lampe in 1980, the two continued to earn their livelihood exclusively by farming until falling on hard times in the late 1990's. (Appellee's Appendix at 11–12.) Although the Debtors primarily farmed grain, they had raised cattle from time to time before 1999. The Debtors obtained loans from the Bank and from the Farm Services Agency in order to finance their farming operation.

Both Debtors contributed their labor to the farm; Sheila Lampe performed all tasks except for operating the planter and combine. In approximately 1997, Sheila Lampe obtained part-time employment as a secretary to supplement the family's farm income, but she continued to work on the farm in addition to her outside employment.

Despite the Debtors' efforts, they were unable to meet their financial obligations to the Bank and to the Farm Services Agency. In 1999, the Debtors informed the Bank that they were struggling and that they would be unable to make a payment on the Farm Services Agency loan. The Bank, which had been the source of the Debtors' operating capital, did not renew the Debtors' operating loan, and commenced foreclosure on the Debtors' farm

---

1. Honorable Donald E. Cordova, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

property thereafter. (Appellant's Appendix at 12.)

In February 2000, Donald Lampe took a job with a farm implement dealer. Sheila Lampe began working as a daycare provider and also obtained work with a local cooperative. Both Debtors continued to work on the farm notwithstanding their outside jobs. Even without an operating loan in 1999, the Debtors obtained funds to plant a crop through a local farm cooperative, which extended them credit for fuel, seed, fertilizer, and other necessary supplies.

The Debtors filed a joint Chapter 7 petition on June 19, 2000. On Schedule C, filed on July 12, 2000, the Debtors claimed a $15,000.00 exemption for certain farm equipment[2] under the Kansas tools of the trade exemption, Kan. Stat. Ann. § 60–2304(e). Following the meeting of creditors in August 2000, the Bank and the Chapter 7 Trustee, Darcy D. Williamson ("Trustee"), filed timely objections to the Debtors' claimed exemption. *See* Fed. R. Bankr.P. 4003(b).

The Bank argued that the Debtors did not qualify for the claimed exemption under Kan. Stat. Ann. § 60–2304(e) because farming was not their primary occupation, as evidenced by the Debtors' Schedule I, in which they had listed their outside employment. The Bank asserted that it held valid liens on the property claimed as exempt, which the Debtors could not avoid. The Trustee also asserted that the Debtors' primary occupation was not farming, and claimed that Sheila Lampe "may not

be entitled to exempt 'tools of the trade' pursuant to *In re Goebel,* 75 B.R. 385 ( [Bankr.D.Kan.] 1987)." (Appellant's Appendix at 8.)

The bankruptcy court held an evidentiary hearing on January 3, 2001, taking testimony and admitting documentary evidence. The court took the matter under advisement and issued its Order on Objections to Exemptions and Lien Avoidance[3] on February 5, 2001. The court found that, despite the Debtors' outside employment, the Debtors' primary occupation was farming at the time that they filed for bankruptcy. The court concluded, however, that Sheila Lampe could not claim a $7,500.00 exemption in the farm equipment because she did not have a separate ownership interest therein. The Debtors filed a timely notice of appeal, and the Bank filed its cross appeal thereafter. *See* Fed. R. Bankr.P. 8002(a).

## II. Jurisdiction

■ The bankruptcy court's order regarding the Debtors' claim of exemption is an appealable order for purposes of this Court's jurisdiction. 28 U.S.C. § 158(a)– (b); *Gregory v. Zubrod (In re Gregory),* 245 B.R. 171, 172 (10th Cir. BAP 2000), *aff'd without published opinion,* 246 F.3d 681 (10th Cir.2000). The parties filed timely notices of appeal under Fed. R. Bankr.P. 8002, and consented to this Court's jurisdiction by failing to proceed in the United States District Court for the District of Kansas. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

---

2. Specifically, each of the Debtors claimed the maximum $7,500.00 exemption in the following farm property: an Allis Chalmers Wide Front Tractor valued at $600.00, a Case Auger Wagon worth $300.00, a Cattle Trailer listed at $500.00, a 1962 International Truck valued at $2,250.00, Cattle panels worth $450.00, a 5th wheel trailer worth $1,500.00,

a 1984 C–7000 4½ ton grain truck listed at $3,000.00, a 1984 GMC flatbed pickup worth $1,400.00, and equity in a 1980 IHC 3588 2 + 2 tractor in the amount of $5,000.00.

3. The bankruptcy court's order concerning lien avoidance, although tied to the exemption issues, is not a subject of this appeal.

## III. Standard of Review

■ Whether the bankruptcy court erred in finding that the Debtors were primarily employed as farmers is a factual matter subject to reversal under the clearly erroneous standard. Fed. R. Bankr.P. 8013; *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 880 (10th Cir. BAP 2002) (findings of fact are reviewed for clear error). " 'A finding of fact is clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.' " *Paton v. New Mexico Highlands University*, 275 F.3d 1274, 1278 (10th Cir. 2002) (quoting *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 892 (10th Cir.2000)). Whether the court properly applied the Kansas exemption for tools of the trade in precluding Sheila Lampe from claiming an exemption is a question of law, reviewable *de novo. In re Zibman*, 268 F.3d 298, 301 (5th Cir.2001); *In re Dudley*, 249 F.3d 1170, 1174 (9th Cir.2001); *accord In re Johnson*, 113 B.R. 44, 45 (W.D.Okla.1989).

## IV. Discussion

Because neither Debtor would be entitled to claim an exemption for the farm equipment under Kan. Stat. Ann. § 60–2304(e) if they were not primarily or principally engaged as farmers at the time the petition was filed, *see Seel v. Wittman*, 173 B.R. 734, 736 (D.Kan.1994) (noting that, under *Jenkins v. McNall*, 27 Kan. 532, 533–34 (1882), if debtor has two jobs, exempted property "must belong to his [or her] main or principal business"), we first address the Bank's cross-appeal.[4]

### A. Bank's Cross–Appeal

The Bank contends that the bankruptcy court erred in finding that the Debtors were farmers because farming was not the Debtors' primary occupation when they filed their Chapter 7 petition. The Bank relies on the Debtors' schedules I and J, in which the Debtors did not disclose any income or expenses from farming. In addition, the Bank contends that, because the Debtors had full-time jobs off the farm, had no operating funds to finance their farm, and a foreclosure of the Debtors' property was pending, the Debtors had abandoned farming as their primary occupation, precluding an exemption under Kan. Stat. Ann. § 60–2304(e). (Cross Appellant's Brief at 5.) The Bank argues that, because the bankruptcy court recognized in its order that any income from the Debtors' farm operation in the future would "likely not produce gross income which exceeds their non-farm income," the court could not have found that the Debtors were farmers entitled to a tools of the trade exemption. (Cross Appellant's Brief at 5–6.)

■ Kansas has opted out of the federal exemption scheme provided in 11 U.S.C. § 522. Kan. Stat. Ann. § 60–2312. The state exemption for tools of the trade provides that:

> [e]very person residing in [Kansas] shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in [Kansas], the ... books, documents, furniture, instruments, *tools, implements and equipment*, the breeding stock, seed grain or growing plants stock, or the other tangible means of production *regularly and reasonably necessary in carrying on the*

---

4. Although the Trustee argued in her objection before the bankruptcy court that the Debtors were not entitled to claim an exemption under Kan. Stat. Ann. § 60–2304(e) because farming was not the Debtors' primary occupation, the Trustee did not appeal from the bankruptcy court's order. (Appellant's Appendix at 8.)

*person's profession, trade, business or occupation in an aggregate value not to exceed $7,500.*

Kan. Stat. Ann. § 60–2304(e) (emphasis added). A debtor's right to an exemption is determined as of the date that the bankruptcy petition is filed. *In re Currie,* 34 B.R. 745, 748 (D.Kan.1983); *see In re Wolf,* 248 B.R. 365, 367 (9th Cir. BAP 2000); *In re Owens,* 269 B.R. 794, 796 (Bankr.N.D.Ill.2001); *accord Mansell v. Carroll,* 379 F.2d 682, 684 (10th Cir.1967).

■ In Kansas, the tools of the trade exemption applies only to the business or profession in which the debtor is "principally engaged." *Seel,* 173 B.R. at 736 (noting that Kansas "has long followed" the rule that a debtor may only exempt tools used in his or her principal business); *see In re Zink,* 177 B.R. 713, 715 (Bankr. D.Kan.1995) ("When a debtor carries on more than one trade or profession, the tools of the trade exemption is applicable only to his or her primary occupation."); *In re Massoni,* 67 B.R. 195, 196–97 (Bankr.D.Kan.1986) (noting that exemption applies only to "those articles belonging to [the debtor's] main or principal business, or to the business in which he [or she] is principally engaged"); *cf. In re Kobs,* 163 B.R. 368, 373 (Bankr.D.Kan.1994) (noting that "[w]hether [the primary occupation] test should be applied is problematic since the statute itself contains no language prohibiting outside employment or that indicates that a person cannot qualify for exemptions when he or she holds more than one job").

The Bank relies on *In re Johnson,* 19 B.R. 371 (Bankr.D.Kan.1982), for the proposition that the Debtors had abandoned farming as their primary occupation. In *Johnson,* the debtors were pig farmers who admitted that they had not been engaged in pig farming on the date of their bankruptcy petition. *Id.* at 375. The bankruptcy court in *Johnson* noted that the debtors would not be able to resume pig farming without financial assistance and that foreclosure on their farm property was imminent. *Id.* at 375.

■ The court recognized that "[t]he general rule is that the debtor must be engaged in the trade on the date of the petition, in order to claim the tools of that trade as exempt." *Id.* at 374. The court acknowledged, however, that if the debtor "only temporarily cease[s] the vocation at the time of the petition, the tools of trade may still be exemptible." *Id.* at 374–75. Although the debtors in *Johnson* testified that they could resume pig farming if they could obtain financing or if they could proceed with a custom feeding arrangement, the court concluded that the prospects for future farming were "nebulous and indefinite." *Id.* at 375.

■ In this case, the bankruptcy court noted that, despite the fact that the Debtors had been working in non-farming jobs, they had continued to farm in the months preceding their bankruptcy filing. The Debtors continued farming post-petition, as well. The Debtors had planted a crop before filing for bankruptcy in 2000, and harvested that crop post-petition.[5] The court recognized that "the proceeds of those crops (including government payments that [were] attribut[able] to some of them) were equal to or greater than the off-farm income that the debtors [had] earned." (Appellant's Appendix at 15.) The court also noted that Donald Lampe had harvested the crops while working a forty-hour workweek with the implement

---

**5.** The court also noted that, at the time that it issued its order, the Trustee, the farm cooperative, and the Bank were litigating their respective rights to the crop proceeds and government payments stemming from the Debtors' farm operation in 2000.

dealer. Unlike the debtors in *Johnson,* the Debtors herein had obtained credit to continue farming even after the Bank refused to renew their operating loan.

Although the Bank had commenced foreclosure on the Debtors' farmland, the Debtors continued to farm the land at the time that they filed for bankruptcy. In addition, the court heard testimony from Donald Lampe that he had leased farmland in the past for cattle and grain operations, and that his mother owned land that they would likely lease in the future to continue farming. (Appellant's Appendix at 12.) The bankruptcy court found that both of the Debtors were farmers due to their "long history of farming," their testimony at the hearing that they intended to continue farming, and the fact that they had been engaged in farming activity immediately before the petition date and in the months thereafter. (Appellant's Appendix at 15–16.)

■ Even if the Debtors had not been engaged actively in farming at the moment that they filed their Chapter 7 petition, they expressed the intent to continue farming. The Tenth Circuit Court of Appeals has recognized that "[a] temporary abatement of work in a trade is not fatal to a claim for an exemption for tools or implements of that trade." *Central Nat'l*

*Bank and Trust Co. v. Liming (In re Liming),* 797 F.2d 895, 902 (10th Cir. 1986). We conclude that the bankruptcy court's finding that the Debtors were primarily engaged in farming for purposes of the Kansas tools of the trade exemption is not clearly erroneous. *See In re Larson,* 260 B.R. 174, 187–88 (Bankr.D.Colo.2001) (concluding that debtors were engaged in agriculture as principal occupation for purposes of Colorado exemption despite having taken full-time trucking jobs two years prior to bankruptcy filing); *In re Zimmel,* 185 B.R. 786, 789 (Bankr.D.Minn.1995) (noting that whether debtor qualifies for Minnesota exemption "depends on the debtor's historical involvement with farming and present intentions").[6]

### B. Debtors' Appeal

In their appeal, the Debtors contend that the bankruptcy court erred in concluding that Sheila Lampe was not entitled to exempt the farm equipment as tools of the trade under Kan. Stat. Ann. § 60–2304(e). The Debtors argue that under Kansas law, Sheila Lampe is a co-owner of the farm equipment and entitled to a $7,500.00 exemption. Relying on Kan. Stat. Ann. § 23–201[7] and a rebuttable presumption that jointly owned property is owned equally by the owners thereof, *see*

---

6. The Bank also contends that, even if the Debtors were grain farmers, they may not claim a tools of the trade exemption in equipment used for raising cattle because they had ceased cattle farming prior to filing for bankruptcy. (Cross Appellant's Appendix at 6.) The bankruptcy court did not address this distinction and we cannot discern whether the issue was presented to the court for its consideration. Accordingly, we decline to address it on appeal. *Wittman v. Toll (In re Cordry),* 149 B.R. 970, 974 (D.Kan.1993) (noting that issues that could have been raised before bankruptcy court but were not raised are waived on appeal).

7. Kan. Stat. Ann. § 23–201(a) provides, in part, that "[t]he property, real and personal, which any person in [Kansas] may own at the time of the person's marriage ... shall remain the person's sole and separate property, notwithstanding the marriage...." *Id.* In addition, subsection (b) states that "[a]ll property owned by married persons ... shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a common ownership in marital property which vests at the time of commencement of such action...." *Id.*

*Walnut Valley State Bank v. Stovall,* 223 Kan. 459, 574 P.2d 1382, 1385 (1978), the Debtors contend that "there is a presumption of equal ownership as between husband and wife." (Appellant's Brief at 6, 9.)

The Trustee argues that the bankruptcy court properly determined that Sheila Lampe was not entitled to the exemption because she "produced no evidence indicating that she obtained any of the farm equipment with her separate property or by either gift or inheritance." (Appellee's Brief at 12.) The Trustee maintains that the bankruptcy court correctly determined that the Debtors' farm was a sole proprietorship run by Donald Lampe and that, if Sheila Lampe was co-owner of the farm equipment, the Debtors operated the farm as a partnership, precluding either of them from utilizing the tools of the trade exemption. (Appellee's Brief at 12.)

 In interpreting the tools of the trade exemption, the Court must first examine the language used by the Kansas legislature in Kan. Stat. Ann. § 60–2304(e). *See Dunivent v. Bechtoldt (In re Bechtoldt),* 210 B.R. 599, 601 (10th Cir. BAP 1997) (construing Wyoming exemption statute). "Language is given its common meaning if the unambiguous statutory language is not defined and the result is not absurd or contrary to the legislative purpose." *Id.; see also Gregory v. Zubrod (In re Gregory),* 245 B.R. 171, 173 (10th Cir. BAP 2000), *aff'd without published opinion,* 246 F.3d 681 (10th Cir.2000) (same). Moreover, this Court has recognized that "[w]hen interpreting exemption statutes, the interpretation must further the spirit of such laws. Specifically, the court must be 'guided by the general principle that exemption statutes are to be liberally construed so as to effect their beneficent purposes.'" *Gregory,* 245 B.R. at 173 (quoting *Royal v. Pancratz (In re Pancratz),* 175 B.R. 85, 93 (D.Wyo.1994)).

Kansas law is in accord. *See In re Mueller,* 71 B.R. 165, 167 (D.Kan.1987) ("exemption laws are to be construed liberally in favor of exemption"), *aff'd,* 867 F.2d 568 (10th Cir.1989); *In re Massoni,* 67 B.R. 195, 197 (Bankr.D.Kan.1986) ("The Kansas exemption laws are to be liberally construed 'so as to effect the humane purposes of the legislature in enacting them.'") (quoting *Jenkins v. McNall,* 27 Kan. 532, 533 (1882)).

 As written by the Kansas legislature, the tools of the trade exemption applies to personal property, including equipment, of "[e]very person residing in [Kansas]," that is "regularly and reasonably necessary in carrying on the person's profession, trade, business or occupation." Kan. Stat. Ann. § 60–2304(e). The text of the statute does not identify the exact quantum of ownership required for a debtor to qualify for the exemption. Courts have recognized that ownership of the personal property claimed as exempt is implied in the statute. *Kobs,* 163 B.R. at 373 (recognizing "submerged issue of 'ownership' which the statute only implies must be fulfilled"); *see In re Hartman,* 211 B.R. 899, 903 (Bankr.C.D.Ill.1997) ("It is a fundamental tenet of the law of exemptions that the debtor must have an ownership interest in the property before an exemption may be claimed.").

The Debtors contend that they are entitled to a presumption that they owned the equipment equally under the statutes governing marriage and divorce in Kansas. They argue, in essence, that because Kan. Stat. Ann. § 23–201 recognizes that married persons can hold property as co-owners, the property they acquired during the marriage from funds that had been deposited in the Debtors' joint bank account is presumed to be owned equally. (Appellant's Brief at 10.) Relying on *Walnut Valley State Bank,* 574 P.2d at 1385, the

Debtors maintain that the Trustee was required to produce evidence to rebut the presumption of co-ownership under Kansas law. (Appellant's Brief at 10.) The Debtors' argument is misplaced.

■ Although a rebuttable presumption of *equal* ownership arises under Kansas law if a husband and wife own property as tenants in common; *see* Kan. Stat. Ann. § 58–501; *In re Griffin,* 141 B.R. 207, 211 (Bankr.D.Kan.1992); *Walnut Valley State Bank,* 574 P.2d at 1385; that presumption arises only after co-ownership is established. The Debtors cannot rely on the presumption of equal ownership to establish that Sheila Lampe co-owned the equipment with her husband.

The exemption statute for tools of the trade does not express how a debtor must own property for the exemption to apply, and the bankruptcy court took a strict approach in requiring Sheila Lampe to demonstrate that she had obtained a distinct interest in the farm equipment "with her separate property, or by a gift or inheritance." (Appellant's Appendix at 17.) The bankruptcy court reasoned that, under Kansas law, married individuals may own separate property and engage in a separate trade or business, and, because Kansas is not a community property state, a spouse does not acquire an ownership interest in any property or business owned by the other spouse based solely on the marital relationship. According to the bankruptcy court, therefore, a spouse may obtain an ownership interest in the other spouse's property or business only through gift, inheritance, or an agreement to operate the business jointly as a separate entity cognizable under Kansas law.

In addition, the court relied on the Debtors' tax returns, which had been prepared by an accountant, in which Donald Lampe was listed as the sole proprietor of the farm, in concluding that Donald Lampe

owned all of the equipment to the exclusion of Sheila Lampe. The court noted that Sheila Lampe had paid no self-employment tax; nor had she reported separate farm income on the tax returns. (Appellant's Appendix at 17.) Accordingly, the court determined that Sheila Lampe had no co-ownership interest in the farm equipment.

Although Donald Lampe testified that he had obtained some of the equipment from his father, the court recognized that most of the equipment claimed as exempt had been acquired with money earned from the farm operation that had been deposited in the Debtors' joint bank account. (Appellant's Appendix at 13.) The tractor claimed as exempt had been purchased by Donald Lampe, but Donald Lampe testified that both he and his wife had "go[ne] in together" on the purchase. (Appellee's Appendix at 8.) In addition, both Debtors signed the notes and security agreements to obtain operating loans for which the equipment served as collateral. (Appellant's Appendix at 53–54.) Donald Lampe testified that all of the property claimed as exempt "was [Sheila Lampe's] equipment, too," and that "everything [they had] was half and half." (Appellant's Appendix at 54.)

■ We conclude that, based on the evidence of the Debtors' intent, their conduct in carrying on the farming operation, in purchasing the equipment from a joint account funded by earnings from the farm, and in and pledging the equipment together as security for operating loans, Sheila Lampe co-owned the property for purposes of the tools of the trade exemption. *See In re Flake,* 32 B.R. 360, 364 (Bankr. W.D.Wis.1983) (concluding that evidentiary hearing required to determine whether debtor-wife had interest in farm implements to qualify for exemption). Although no Kansas state court has addressed the

precise issue presented herein concerning co-ownership of personal property in the context of marriage, bankruptcy courts have recognized that "courts must determine co-ownership from evidence of intent and conduct of the party claiming title." *In re Brollier*, 165 B.R. 286, 291 (Bankr. W.D.Okla.1994) (applying Kansas law); *Griffin*, 141 B.R. at 210 (same). The bankruptcy court's reliance on the Debtors' tax returns in concluding that Donald Lampe was the sole proprietor of the farm is contrary to the evidence and contrary to its findings that both Debtors worked together on the farm, each furnishing labor and engaging in farming activity on a daily basis. *See Zimmel*, 185 B.R. at 789 (noting that tax returns are relevant but not controlling in context of tools of the trade exemption).

The bankruptcy court reasoned, and the Trustee argues, that if Sheila Lampe co-owns the farm equipment, then, as a matter of Kansas law, the Debtors operated the farm as a partnership. Individual partners are precluded from claiming an exemption in partnership property. *In re Kane*, 167 B.R. 224, 226 (Bankr.D.Kan. 1993). We believe that the Trustee's argument and the bankruptcy court's approach is at odds with the liberal construction that must be afforded the tools of the trade exemption. The Debtors' farming operation was not a partnership in the legal sense, but a family business operated as a proprietorship with each Debtor as a co-owner of the equipment.

The "general rule regarding exemption laws is that they are to be liberally construed in favor of those intended by the legislature to be benefi[t]ted and favor-

able to the purposes of enactment." *Nohinek v. Logsdon*, 6 Kan.App.2d 342, 628 P.2d 257, 259 (1981) (citing *Miller v. Keeling*, 185 Kan. 623, 347 P.2d 424 (1959)). The bankruptcy court noted that Kansas's version of the Revised Uniform Partnership Act, Kan. Stat. Ann. § 56a–202(a), provides that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." (Appellant's Appendix at 18.) In the context of a married couple, however, the issue of whether a partnership exists is not as clear as the bankruptcy court and the Trustee posit. *See, e.g., Griffin*, 141 B.R. at 211–12 (recognizing that " 'the mere fact that a wife participates in the conduct of a business with her husband [does not] necessarily establish a partnership between them, unless there exist some other indicia of partnership and the intent to form a partnership is clearly proved.' " (quoting 59A Am.Jur.2d Partnership §§ 240–242)).[8] Indeed, the bankruptcy court in Kansas has approached the issue in this context differently, and has reached inconsistent results. *Compare Griffin*, 141 B.R. at 211–12 (concluding that husband and wife who "worked as a team on the farm" had not formed a partnership), *with In re Oetinger*, 49 B.R. 41, 43 (Bankr.D.Kan.1985) (concluding that "the only way [the debtor-wife] can be co-owner of the [farm] equipment is by virtue of a partnership between her and her husband"); *see also Kobs*, 163 B.R. at 373 (debtor-wife's unrebutted testimony that she co-owned farm property claimed as exempt satisfied exemption statute; no discussion of partnership); *Johnson*, 19 B.R. at 374 (finding that debtor and debt-

8. We recognize that the Uniform Partnership Act as revised was enacted in Kansas in 1998. *See* Kan. Stat. Ann. §§ 56a–101 through 56a–1305 (effective January 1, 1999); *Halley v. Barnabe*, 271 Kan. 652, 24 P.3d 140, 146

(2001). The comments to the uniform act, however, indicate that, with respect to the definition of a partnership, "[n]o substantive change in the law [was] intended." Unif. Partnership Act § 202, cmt. 1 (1997).

or's mother operated farm as proprietors, rather than as partners); *accord In re Zink*, 177 B.R. 713, 715 (Bankr.D.Kan. 1995) (construing exemption in Chapter 12 context). We conclude that those cases that have adopted a strict approach, requiring debtors to identify separate property and to refute any notion that their farm was operated as a partnership, *see, e.g., Goebel*, 75 B.R. at 386–87; *Oetinger*, 49 B.R. at 43, are not consistent with the intent of the Kansas legislature in enacting the exemption.

▬▬▬ Under 11 U.S.C. § 522(m), "each debtor in a joint case is entitled to the state exemptions." *Currie*, 34 B.R. at 748; *cf. Granger v. Watson (In re Granger)*, 754 F.2d 1490, 1492 (9th Cir.1985) (holding that states that have opted out of the federal exemptions are not bound by § 522(m)). In Kansas, even "[w]here one spouse is employed and the other is not, both spouses are entitled to the tool of the trade exemption [in order to further] the policy of exemption statutes, to protect debtors and their dependents by giving them a means to avoid destitution." *Currie*, 34 B.R. at 748 (emphasis omitted). Moreover, "[o]nce an exemption has been claimed [by the debtor], it is the objecting party's burden to prove that the exemption is not properly claimed." *Gregory*, 245 B.R. at 174; *see* Fed. R. Bankr.P. 4003(c). We do not believe that the Trustee met her burden of proving that Sheila Lampe was not entitled to exempt $7,500.00 in the farm equipment. The Debtors' intent regarding ownership of the farm property and their conduct in operating the farm established Sheila Lampe's co-ownership interest for purposes of the exemption. *Griffin*, 141 B.R. at 210; *Brollier*, 165 B.R. at 291; *see Currie*, 34 B.R. at 748 ("depen-

dents may claim the exemptions to the same extent the debtor can, because exemption laws are to be construed liberally in favor of those they are intended to protect").

## V. Conclusion

For the foregoing reasons, the Bankruptcy Court's decision is AFFIRMED, in part, and REVERSED, in part. The case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

McFEELEY, Chief Judge, concurring in the result.

Although I concur with the majority, I write separately to emphasize that under operation of Kansas law Sheila Lampe had an identifiable ownership interest in the farm equipment. Pursuant to Kansas case law, after a marriage, each spouse acquires an inchoate interest in the separate real property of the other. *Jackson v. Lee*, 193 Kan. 40, 392 P.2d 92, 95 (1964) (interpreting the nature of right of heirship versus the right of inheritance); *see also Cady v. Cady*, 224 Kan. 339, 581 P.2d 358, 362 (1978) (finding a spouse possesses an inchoate interest in real estate held by the other spouse). The inchoate interest in real property prohibits the alienation of that property without the consent of both parties. While personal property is not similarly restricted, and a spouse may have unfettered control over separate personal property, marriage does confer in a spouse a contingent interest in the separate personal property of the other. This contingent interest vests after either a death or the filing of a divorce petition. *See* Kan. Stat. Ann § 23 201(b) (1978).[1]

---

1. The contingent interest vests in all property owned by either party whether separate or jointly acquired. In other words, once a di-

vorce petition is filed, everything goes into one marital pot that the court may distribute equitably as it sees fit regardless of the "own-

Contingent interests are cognizable property rights. *See Kirby v. United States,* 329 F.2d 735, 737 (10th Cir.1964) ("[U]nder Kansas law contingent rights in property may be transferred."). Here, Sheila Lampe had, at a minimum, a contingent interest in the farm equipment. Although this interest had not vested, it is a property right that she brought into the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1); *Williamson v. Jones (In re Montgomery),* 224 F.3d 1193, 1195 (10th Cir.2000) (Congress clearly intended that contingent interests are to be included in the property of the bankruptcy estate).

Additionally, I note that in reaching its conclusion the bankruptcy court relied on § 23–201(a) to presume that funds derived from separate property remain separate property regardless of the intent of parties. This presumption overlooks the possibility that property may be owned jointly. The Kansas Supreme Court has stated that § 23–201(a) "does not apply to property jointly accumulated during the marriage." *Ackers v. First National Bank,* 192 Kan. 319, 387 P.2d 840, 845 (1963).[2] However, because the issue was not presented to them, the Kansas Supreme Court declined to consider how property might be jointly acquired or if property acquired through a separate account may, by agreement, be jointly owned after the marriage. In this case, the bankruptcy court also did not consider that question.

Finally, I agree with the majority that the test articulated in *Brollier* is the best approach for determining co-ownership. This test accommodates the contingent property interest that each spouse has by virtue of the marital relationship and recognizes that property may be jointly acquired during the marital relationship.[3]

---

ership" prior to the filing of the petition. Kan. Stat. Ann. § 23–201(b).

2. Although Kan. Stat. Ann. § 23–201 has been amended since *Ackers* was decided, the amendment did not significantly change the language of § 23–201(a) so as to abrogate *Ackers*.

3. We note that this test is also in accordance with other provisions of Kansas law. For example, in 1994 the Kansas legislature amended the Probate Code to incorporate a comprehensive elective share provision. See Kan. Stat. Ann. § 59–6a201 *et seq.* (1994). The purpose of the new elective share provision was to acknowledge that "the economic rights of each spouse are derived from an unspoken marital bargain under which the partners agree that each partner is to enjoy a half interest in the fruits of the marriage." *In re Estate of Antonopoulos,* 268 Kan. 178, 993 P.2d 637, 642 (1999) (citing the Uniform Probate Code Rev. Art. II, General Comment, 8 U.L.A. 93 (1998)).